Syllabus.

#### Staunton.

### K. C. ATWOOD V. B. P. HUFF.

September 22, 1921.

Absent, Sims and Burks, JJ.

1. STOCK AND STOCKHOLDERS—*Dividends—Increase of Capital—Dividend' Payable in Future.*—At a meeting lawfully called, the stockholders of a corporation voted to increase its capital stock $25,000, and provided that the "present stockholders of the corporation shall have a cash dividend declared to them of ten per cent., payable out of the last assessment from the extra $25,000." The purpose of this ten· per cent. dividend was to equalize the value of the old and new stock.

 *Held:* That whether the ten per cent. which the company, by this resolution, obligated itself to pay to the then stockholders was technically a dividend or not, when acted upon it created an obligation, having all the effects of a dividend.

2. STOCK AND STOCKHOLDERS—*Dividends—Authority of Directors and Stockholders to Declare Dividend—Estopped.*—Whether the stockholders of a corporation had the power to declare a dividend or the board of directors alone had such authority, where the stockholders and directors, by common consent, concurred in the management of the corporation, the rights of creditors being in no way involved, it will be assumed that the directors accepted a resolution of the stockholders declaring a dividend to the old stockholders at a meeting called for the purpose of amending the charter so as to increase the corporation's capital stock, and the corporation having acted on the resolution in securing the amendment of its charter is estopped to deny its validity.

3. DIVIDENDS—*To Whom Dividends Belong—Future Dividends.*—A dividend belongs to the owner of the stock at the time it is declared, and this whether it is payable at a future time or not.

4. DIVIDENDS—*Transfer of Stock—To Whom Dividends Belong.*— As between vendor and vendee, although the rule may be changed by contract between the parties, in the absence of

an agreement to the contrary, dividends declared prior to the transfer of ownership belong to the transferer, and the rule is the same although the dividend is not payable until after the transfer, while dividends declared subsequent to the change of ownership belong to the transferee, and it is immaterial that such dividends were earned in whole or in part prior to such transfer.

5. DIVIDENDS—*Transfer of Stock—To Whom Dividends Belong—Burden of Proof.*—The burden of proof is upon the vendee upon a transfer of stock to show that dividends previously declared, but not yet paid, are included in the sale. The agreement being silent on this subject, the presumption is that they are not so included, and hence do not pass to the vendee.

6. APPEAL AND ERROR—*Findings of Court—Section 6363 of the Code of 1919.*—In the instant case, although there was some conflict in the evidence upon the question whether the parties to a transfer of stock intended the transfer to carry a dividend already declared but not yet paid, the findings of the court below, without the intervention of a jury supporting the claim of the transferor, was neither plainly wrong nor without supporting evidence, and therefore under section 6363 of the Code of 1919 cannot be set aside.

Error to a judgment of the Court of Law and Chancery for the city of Roanoke in a proceeding by motion for a judgment for money. Judgment for plaintiff. Appellant and intervenor assigns error.

*Affirmed.*

The opinion states the case.

*Staples, Cocke & Hazelgrove,* for the plaintiff in error.

*Woods, Chitwood, Coxe & Rogers* and *Hall, Wingfield & Apperson,* for the defendant in error.

·PRENTIS, J., delivered the opinion of the court.

On November 9, 1911, the stockholders of the Stuart Orchard Company, at a meeting lawfully called by the board

79

of directors for the purpose of amending its charter by increasing its outstanding capital stock from $50,000 to $75,-000, passed a resolution, the pertinent part of which, as it affects this litigation, reads thus:

"Resolved that we increase the capital stock of the Stuart Orchard Company to $75,000.00, and that the present stockholders shall have a cash dividend declared to them of ten per cent, payable out of the last assessment from the extra $25,000.00 issue * * *."

The reason for this resolution is thus explained in the brief of counsel for the plaintiff in error: "At this time it was found necessary to have additional capital in order to carry on the business with greater success, and hence the appropriate steps were taken to obtain an amendment to the charter in order to enable the Stuart Orchard Company to issue and sell $25,000.00 of new stock. However, the assets of the corporation were in excess of its capital stock, and hence the shares of stock with a par value of $100.00 were now worth more. Therefore, it would be unfair to the old stockholders to allow the new stock to participate equally in the gross assets of the corporation at a purchase price of $100.00 per share." In order to obviate this unfairness it was determined to guarantee to the then stockholders by way of a preference over those who should subscribe to the new stock an amount equal to the difference between its actual and its par value, this difference being found to be $10 per share, or ten per cent. To effect this purpose, therefore, the resolution declared a preferred dividend of this amount, to be paid out of the last assessment on the new stock whenever paid. This resolution accomplished the same result as if the new stock had been sold for a premium, instead of at par, $100 per share.

The purpose of the resolution may be otherwise expressed thus, in the language of the attorneys for the defendant in

error: "At the time of the passage of the resolution, the Stuart Orchard Company had a surplus. To have sold the new stock at par and to have allowed the purchasers of the extra $25,000 issue to share in this surplus would be giving them the benefit of the years of accumulation that the old stockholders had brought about. The obvious purpose, therefore, was that the surplus should be distributed among the persons who were the stockholders on November 9, 1911, and thereby put their stock on an equal basis with the new stock. Both the old and the new stock would then be on a parity."

Pursuant to that resolution, the board of directors of the Stuart Orchard Company secured an amendment to its charter, the additional $25,000 of stock was subscribed for, and the stock issued. The last assessment, ten per cent, was paid in July, 1917.

The Stuart Orchard Company and another corporation, the Atwood Orchard and Nursery Company, had previously, in the year 1916, merged with each other, under the name of the Virginia Atwood Orchard Company, Inc., and the new or merged company assumed all of the obligations of the Stuart Orchard Company, and collected the last ten per cent assessment due upon the $25,000 capital stock increase of the Stuart Orchard Company referred to. On November 9, 1911, when the resolution was adopted, Huff, the defendant in error, owned 105 shares of stock in the Stuart Orchard Company, and he subscribed for fifty-four shares of the new stock. Thereafter, on May 13, 1913, Huff and certain other stockholders gave a written option, whereby they agreed to sell their stock in the Stuart Orchard Company. This option did not refer to the resolution of November 9, 1911, or to the ten per cent cash dividend thereby declared. This option was assigned to John C. Shockley, trustee, who, on September 1, 1913, exercised it, and there is a fair infer-

ence that he was then acting for Atwood and another. At the time that option was exercised, Huff and Taylor, another one of the old stockholders, stated to Shockley that they claimed this ten per cent dividend, and demanded that the amount thereof be added to the $150 per share for which their entire holdings were about to be sold. Shockley, however, neither admitted nor denied that they were entitled to the dividend, but responded that the dividend was not then due. Huff, upon advice of counsel, in Shockley's presence, did not insist upon the dividend being then paid because it was not then payable. Atwood claims that when he bought the stock from Shockley he understood that the dividend was sold to him with the stock, but he admits that this information was not derived from either Huff or any of his associates.

The proceedings of both companies show that all of the interested parties were fully aware of the existence of the original resolution, and frequent references thereto appear in the records of the Stuart Orchard Company and in reports made by its secretary and treasurer. One of several similar reports, that of December 31, 1915, containing a statement of outstanding liabilities as well as the working capital of the company, has this memorandum attached: "This takes no account of the interest on past due assessments and no account of the ten per cent dividend to be paid old stockholders out of the last assessment of the last stock issued. This dividend will amount to $5,000." And the minutes show that this report was ordered to be spread upon the records of the company upon motion of Shockley, seconded by Atwood. After the final installment of ten per cent upon the additional stock had been collected, Huff instituted this motion against the Virginia Atwood Orchard Company, Inc., for the recovery of the ten per cent upon 105 shares of stock of the Stuart Orchard Company, of

which he was the owner in November, 1911, when the resolution was adopted—that is, for $1,050.

The defendant company filed its affidavit disclaiming any interest in the amount constituting the subject matter of the motion, but alleging that Atwood had a claim thereto; and thereupon Atwood was allowed to intervene, and this controversy is between Huff and Atwood as to which is entitled to the amount.

The parties waived a jury, and submitted all questions of law and fact to the judge of the trial court upon a written stipulation of the evidence. The court entered judgment against the company in favor of Huff, and Atwood assigns error.

[1-3] The chief argument for Atwood appears to be based upon the claim that the stockholders in 1911 had no legal authority to declare a dividend, because the board of directors alone has such authority to declare corporate dividends.

In this case we do not think it necessary to undertake to follow the learned counsel in their discussion of the powers, and the limitations thereof, of stockholders and directors in this respect. It is observed, however, that where stockholders and directors, by common consent, concur in the management of a corporation, as is clearly shown to have been the case here, the rights of creditors being in no way involved, it will be assumed that the directors accepted the resolution of the stockholders declaring a dividend, and the corporation having acted on the resolution is estopped to deny its validity. *Thiry* v. *Banner Window Glass Co.*, 81 W. Va. 39, 93 S. E. 958, L. R. A. 1918-B, note 1051. In our view it is entirely immaterial whether the ten per cent which the company, by the resolution, obligated itself to pay to the then stockholders, is technically a dividend or not. It created an obligation, having all of the effects of a dividend. It is referred to in the resolution as a dividend, whenever referred to in the minutes of the stockholders'

meeting, it is so called, and by both litigants in their pleadings it is thus designated. When acted upon, it constituted an obligation of the Stuart Orchard Company to its then stockholders, created for the purpose of equalizing the value of the old and the new stock. The Virginia Atwood Orchard Company, Inc., has recognized it as its obligation only because upon the merger it assumed the liabilities of the Stuart Orchard Company. If it was not then a debt previously contracted by the Stuart Orchard Company, it could not be an obligation of the merged company. This dividend or debt was a part of the consideration to be paid out of the subscriptions of the new stockholders to the old stockholders upon the amendment of the charter whereby the new subscribers were permitted to become stockholders. By acting upon that resolution in securing the amendment to its charter, under which the corporation has since transacted business for many years, it ratified and approved the incurring of that obligation. It is perfectly well settled that a dividend (and as we have indicated, this obligation must be construed to have all of the attributes of a dividend) belongs to the owner of the stock at the time it is declared, and this whether it is payable at a future time or not.

[4] This is said in 14 C. J., p. 820, sec. 1242: "So as between vendor and vendee, although the rule may be changed by contract between the parties, in the absence of an agreement to the contrary, dividends declared prior to the transfer of ownership belong to the transferor, and the rule is the same although the dividend is not payable until after the transfer, while dividends declared subsequent to the change of ownership belong to the transferee, and it is immaterial that such dividends were earned in whole or in part prior to such transfer." Pertinent cases are, *Bowers* v. *Post* (D. C.), 209 Fed. 660, affirmed 220 Fed. 1006, 135 C. C. A. 665; *Wheeler* v. *Northwestern Sleigh Company*, (C. C.), 39 Fed. 347; *Cogswell* v. *Second National Bank*, 78 Conn. 75, 60 Atl. 1059, affirmed 204 U. S. 1, 27 Sup.

Ct. 241, 51 L. Ed. 343; *Bright* v. *Lord,* 51 Ind. 272, 19 Am. Rep. 732; *Hill* v. *Newichawanick Co.,* 8 Hun. (N. Y.) 459, affirmed 71 N. Y. 593; *Hopper* v. *Sage,* 112 N. Y. 530, 20 N. E. 350, 8 Am. St. Rep. 771; *Clark* v. *Campbell,* 23 Utah 569, 65 Pac. 496, 90 Am. St. Rep. 716, 54 L. R. A. 508, 7 R. C. L. sec. 267, p. 292.

This proposition is not questioned. It is insisted, however, for the plaintiff in error, that this was not a dividend declared in 1911, and that it did not have the attributes of a dividend until after the contract between the Stuart Orchard Company and the Virginia Atwood Orchard Company which provided that the latter should pay a dividend to the stockholders of the former company, and so, regardless of any corporate action by the former company, this debt only then became an executed obligation of the new corporation to then holders of the stock of the dissolving corporation. Thenceforth, it is admitted, it had every attribute of a dividend, but that it was not until after Atwood had become the holder of the stock that this contract arose and not until then did any of the essential attributes of a dividend attach.

[5] We cannot agree that this is true. If the action of the stockholders of the Stuart Orchard Company and its repeated confirmation thereof from time to time did not create this obligation, it has never yet been created, and does not exist because it has never been formally declared as a dividend by the board of directors of either company. Atwood did not become the owner of this fund merely because he purchased the 105 shares of stock of Huff, after the obligation had been created. It was, of course, within the power of Huff, when he sold the stock, to include this debt or dividend of the company, and to make it payable to his vendee, but the burden is upon the vendee upon such a transfer of stock to show that such debts previously incurred, or dividends previously declared, but not yet paid,

are included in the sale. The agreement being silent on this subject, the presumption is that they are not so included, and hence do not pass to the vendee.

[6] There is some conflict in the evidence as to what the parties understood, but this conflict was submitted to the judge of the trial court, and under Code, 1919, section 6363, "When a case at law is decided by a court or judge without the intervention of a jury, and a party excepts to the decision on the ground that it is contrary to the evidence, and the evidence (not the facts) is certified, the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." This judgment is neither plainly wrong nor without supporting evidence. There is evidence that when the settlement for the transfer of the stock was made, Huff called attention to and claimed this dividend, but as it was not then due and had not been paid, he had no legal right to insist that his vendee should pay it, and upon the advice of counsel he transferred the stock. This, as we have indicated, does not of itself assign the dividend. So that we are of opinion that the resolution of November 11, 1909, ratified in so many ways as it has been since, was the effective declaration of a dividend, constituting a contract between the then holders of the stock of the Stuart Orchard Company and the company, whereby definite rights were fixed, though the realization thereof was deferred, which contract was thereafter assumed by the Virginia Atwood Orchard Company, and that Atwood has failed to show that this dividend obligation or debt, thus clearly due originally to Huff, has ever been by him either sold or assigned.

It is unnecessary for us further to follow the elaborate arguments of counsel in all of their details, because the reasons herein indicated are sufficient to support the judg-

*Affirmed.*