[Civil No. 3377.   Filed June 1, 1934.]

[33 Pac. (2d) 290.]

P. W. LITCHFIELD, Appellant, v. H. H. GREEN, Appellee.

510

Messrs. Moore & Shimmel, for Appellant.

Messrs. Hayes, Stanford, Walton, Allee & Williams, for Appellee.

LOCKWOOD, J.—H. H. Green, hereinafter called plaintiff, brought suit against P. W. Litchfield, hereinafter called defendant, and K. B. McMicken, for the reasonable value of his services as an architect, which plaintiff alleged he had performed for defendant and McMicken at their request. The case was tried to the court and judgment was rendered in favor of plaintiff and against Litchfield in the sum of $450. From this the latter has appealed.

There is but one question involved in this appeal, and that is whether or not the evidence was legally sufficient to show that McMicken was defendant's agent for the purpose of employing plaintiff to do the work which he unqestionably did. The general principles of law to be applied to the evidence in determining this question are set forth by this court in the case of *Brutinel* v. *Nygren*, 17 Ariz. 491, 154 Pac. 1042, 1044, L. R. A. 1918F 713, as follows:

"The primary object of an agency is to bring the principal into contractual relations with third parties —into privity with them; and it is elementary, therefore, to say that a principal is not responsible for

contracts which he has neither directly nor indirectly authorized.

" 'It is axiomatic in the law of agency that no one can become the agent of another except by the will of the principal, either expressed or implied from particular circumstances; that an agent cannot create in himself an authority to do a particular act by its performance; and that the authority of an agent cannot be proved by his own statement that he is such.' *Graves* v. *Horton,* 38 Minn. 66, 35 N. W. 568.

"Of course, the mere order of proof is not vital. This is within the legal discretion of the trial judge, and if he allows evidence of the agent's acts before proof of the agency to do the particular act in question, it will not be reversible error, provided proof of such agency is established at some stage of the trial. But where the nature and extent of an agent's authority is directly involved, it must never be lost sight of; and this cannot be too strongly emphasized, *that it ultimately may be established only by tracing it to its source in some word or act of the alleged principal.* The agent certainly cannot confer authority upon himself, or make himself agent, merely by acting as such, or saying that he is one. Mr. Mechem says:

" 'The agent's authority, moreover, may not be shown merely by proving that he acted as agent. A person can no more make himself agent by his own acts only than he can by his own declarations or statements. If his acts can be connected with the principal in some way, as by showing that the principal knew of them and assented to them, a different result ensues; and, where the acts are of such a public or intimate nature, so notorious, or so long continued as reasonably to justify the inference that the principal must have known of them, and would not have permitted them to continue if they were unauthorized, evidence of them is admissible as against the alleged principal.' Mechem on Agency, § 289. (Italics ours.) . . .

"The mere fact that one is dealing with an agent, whether the agency be general or special, should be

a danger signal, and like a railroad crossing suggests the duty to 'stop, look, and listen,' and if he would bind the principal is bound to ascertain, not only the fact of agency, but the nature and extent of the authority, and in case either is controverted the burden of proof is upon him to establish it. In fine, he must exercise due care and caution in the premises.

" ' . . . Unusual and unnatural acts are not to be tolerated, strained constructions are to be avoided, inferences of facts are to be limited to those which are reasonable, natural and ordinary, and, as has been so often pointed out, inferences are to be drawn only from facts for which the principal is responsible, and not from mere considerations of convenience or policy. The mere fact that one is found to be a general agent justifies neither the court nor jury in guessing that given acts are within the scope of his authority.' Id., § 740. . . .

"Notwithstanding the difficulty in some cases of ascertaining the extent of an agent's power, the general rule is that a person dealing with an agent takes the risk. To the objection that no one would be willing to deal with an agent upon this basis Chief Justice SHAW said:

" 'This objection, we think, is answered by the consideration, that no one is bound to deal with the agent. Whoever does so is admonished of the extent and limitation of the agent's authority, and must, at his own peril, ascertain the fact, upon which alone the authority to bind the constituent depends. Under an authority so peculiar and limited, it is not to be presumed that one would deal with the agent, who had not full confidence in his honesty and veracity, and in the accuracy of his books and accounts. To this extent, the seller of the goods trusts the agent, and if he is deceived by him he has no right to complain of the principal. It is he himself, and not the principal, who trusts the agent beyond the expressed limits of the power; and therefore the maxim, that where one of two innocent persons must suffer, he who reposed confidence in the wrongdoer must bear the loss, operates in favor of the constituent, and not

in favor of the seller of the goods.' *Mussey* v. *Beecher,* 3 Cush. (57 Mass.) 511.''

The evidence in the present case, legally relevant to the issue of agency, taken as strongly in behalf of plaintiff as it reasonably can be, as must be done under our familiar rule, may be summarized as follows: McMicken was during all the ·time involved in this proceeding the ranch manager of the Southwest Cotton Company, which was engaged in the farming business to the west of Phoenix, while defendant was the president of that company, and a cousin of McMicken. Defendant and his wife ordinarily resided in Akron, Ohio, but about twice a year visited Arizona for a short period, and Mrs. Litchfield was the owner of certain real estate located near the property of the Southwest Cotton Company. In April, 1931, the Litchfields visited Arizona, and while here Litchfield was considering the question of building a tower on the property owned by Mrs. Litchfield. He had made certain preliminary sketches of the tower in question, together with the plans of an adjoining residence, which he was considering erecting some years after the tower was finished. During this visit he drove around the valley in company with McMicken, looking at various residences to see if any of them suited his fancy. Seeing a building in Arcadia which he liked, he asked Mc-Micken to find out who the architect was, and Mc-Micken told him that plaintiff was, and that he also had done satisfactory work for the Southwest Cotton Company and the school district at Litchfield. Thereafter these tentative plans prepared by Litchfield were either given by him to McMicken or else Mc-Micken secured them from Litchfield's Arizona residence after the owner had left the valley, the evidence not being clear on that point, and McMicken took them to plaintiff. There is no evidence Litch-

field directed McMicken to do this, McMicken testifying that he did not. The question of what conversation McMicken had with plaintiff in regard to these plans is in dispute. Green claimed that McMicken during this conversation specifically told him that Litchfield wished Green to prepare tentative plans, in accordance with the rough sketches, and would pay for them. Of course this evidence is not admissible for the purpose of establishing agency. McMicken on the stand in the trial absolutely denied making any such statement and insisted that he had told Green that, if he would prepare plans for submission to Litchfield, it was possible a job might eventually come out of it, but that Litchfield had never at any time instructed him to employ Green, nor had he told Green that he had. Thereafter Green did spend considerable time in preparing tentative floor plans, elevation and water colors of a proposed building, which were taken by McMicken to Mrs. Litchfield, and exhibited to her and then returned to Green. There is nothing to show that Mrs. Litchfield ever approved or disapproved of the plans or asked that anything be done in regard to them, the evidence being that she looked at them, but stated that she was not in the least interested in the building. Thereafter McMicken suggested that the plans and drawings be sent to Litchfield at Akron, Ohio, which was done, and they were some time later returned to Green, but under what circumstances or for what reason the record does not show. Plaintiff testified that at no time did he have any direct con tact with defendant in regard to this or any other matter, either orally or in writing, and that all of the business was done with McMicken.

Let us apply the rules of law above laid down to the foregoing statement of facts. Green testified that he knew McMicken was not acting for himself,

but claimed to be defendant's agent. As was said in *Brutinel* v. *Nygren, supra:*

"The mere fact that one is dealing with an agent, whether the agency be general or special, should be a danger signal, and like a railroad crossing suggests the duty to 'stop, look, and listen,' and if he would bind the principal is bound to ascertain, not only the fact of agency, but the nature and extent of the authority, and in case either is controverted the burden of proof is upon him to establish it. In fine, he must exercise due care and caution in the premises. . . . "

And further this agency "ultimately may be established only by tracing it to its source in some word or act of the alleged principal. The agent certainly cannot confer authority upon himself, or make himself agent, merely by acting as such, or saying that he is one. . . . " The statements in regard to agency claimed by plaintiff to have been made by McMicken, therefore, are not admissible for the purpose of proving the existence of the agency. It must rest upon direct evidence of the acts or the words of defendant himself.

An agency may be proved to exist in four ways: First, by direct evidence of an express contract of agency between the principal and the agent. There is not a scintilla of direct evidence that there was any specific contract between defendant and McMicken authorizing the latter to employ plaintiff.

Second, by proof of facts which raise the implication of such a contract. In regard to this we have said in *Little* v. *Brown,* 40 Ariz. 206, 11 Pac. (2d) 610, 613:

" . . . Agency does not have to be proved by direct testimony. It is susceptible of proof as is any other fact and may be established from the circumstances, such as the relation of the parties to each other and to the subject-matter, their acts and conduct. . . . "

But this statement is qualified by the statement in *Brutinel* v. *Nygren, supra,* that it is the acts and conduct of the *principal,* and not of the *agent,* that must be relied upon to show the agency. What acts and conduct of defendant which would raise this implication appear in the evidence? It may be taken as reasonably established therefrom that he was considering the erection of some structure in the indefinite future, that he was examining various properties in the valley, to see if he could discover anything he liked, and that he had drawn some rough sketches of his own which later, in some indefinite manner, came into the possession of McMicken. We think such conduct on the part of defendant falls far short of being sufficient to sustain a finding that McMicken was his agent for the purpose of employing Green.

The third method of establishing agency is by ratification, but in the present case there is not the slightest evidence that defendant did anything which could be considered as a ratification of McMicken's alleged agreement with plaintiff. It is true he retained the plans for some time after they were sent to Akron, but there is no evidence he knew that plaintiff thought there was a definite employment. On the contrary, plaintiff testified he never even billed defendant for the work before the plans were returned.

The fourth method is by estoppel, but here again the acts creating the estoppel must be done by the principal with knowledge or a reasonable ground for believing that the other party will rely thereon and change his position for the worse. There is not the slightest evidence that Litchfield ever knew of plaintiff's belief that he had been employed, until long after the latter had performed the work. We are of the opinion that the evidence legally bearing upon

the issue of agency is utterly insufficient to make a *prima facie* case that McMicken was defendant's agent for the purpose of employing plaintiff to do the work which he admittedly did.

While there is evidence which, if believed by the court, would justify a verdict in favor of plaintiff against McMicken, under the rule that, where a man without lawful authority pretends to act as agent for another, he is himself bound as principal, there is no evidence legally sufficient to bind defendant.

The judgment was not sustained by the evidence and must be reversed. It is so ordered.

ROSS, C. J., and McALISTER, J., concur.