[Civil No. 4080.   Filed October 9, 1939.]

[94 Pac. (2d) 647.]

THE VALLEY NATIONAL BANK, a National Banking Association, Appellant, v. SALT RIVER VALLEY WATER USERS' ASSOCIATION, WILLIAM V. BOYLE, ALMA BOYLE, J. L. ALONSO, HERMINE H. ALONSO, W. W. TAYLOR, GAIL DANA, NEDRA D. DANA and W. L. RICE, Appellees.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellant.

Messrs. Sloan, Scott & Green, Mr. Chas. A. Lambie, Mr. W. L. Barnum and Mr. R. M. Brumback, for Appellees.

LOCKWOOD, J.—Valley National Bank, a corporation, hereinafter called plaintiff, brought suit against Salt River Valley Water Users' Association, hereinafter called the association, to recover certain money to which plaintiff claimed it was entitled. By order of the court, William V. Boyle, Alma Boyle, J. L. Alonso, Hermine H. Alonso, W. W. Taylor, Gail Dana, Nedra D. Dana, and W. L. Rice, were brought in as parties defendant. The case was tried to the court without a jury, and judgment was rendered that plaintiff take nothing by its action, but that the named defendants recover from the association certain amounts set forth in the judgment, and plaintiff appealed.

There is very little dispute as to the facts necessary for a determination of the appeal, and they may be stated as follows: In the year 1932, the association was indebted to various parties in a total of about eight hundred and eighty thousand dollars, which it was necessary to refinance. After looking over the situation, the board of governors of the association decided to do this in a manner which, stripped of all legal form and verbiage, was substantially as follows: A special assessment of five dollars was levied against each share of the stock of the association, the assessment thus amounting to something like a million dollars. The holders of the stock were given the option of either paying their assessments in cash, or execut-

ing promissory notes for the amount of the assessment. These notes were endorsed by the association and used as collateral security for borrowing the money necessary to refinance the liabilities of the association as above. It was further provided that if the shareholders did not either pay cash or furnish their notes as aforesaid, all delivery of water would be cut off. As a result of this action, nearly all of the shareholders executed notes of the character referred to above, but a few of them, of whom plaintiff was one, voluntarily paid in cash the five dollars per share assessment.

It was contemplated, and hoped, at the time this arrangement was made that the entire amount borrowed for refinancing the association would eventually be paid by it out of its regular revenues, and that the makers of the notes would never be called upon to pay them. Most, if not all, of the shareholders who paid cash anticipated that the notes would not be paid, and that, therefore, when the association had fully repaid the money which it was about to borrow, a refund would necessarily be made to those who had paid cash, to put them on an equal basis with the other shareholders who had merely given notes. With this in view, the plaintiff, when it transmitted its cash payment to the association, inserted in its letter of transmittal the following provision:

"Payment is made with the understanding that if and when all or any portion of the amount is due to be refunded, the amount of refund will be made to us, irrespective of the ownership of the land at the time the refund is made. Kindly issue us your receipt for the amount, stating that any refunds in connection with the same will be made to us."

And the several receipts issued by the association to plaintiff had endorsed thereon this quotation from the letter of transmittal.

The money was borrowed by the association, and as time went on, it made repayment of the loan. These payments were made out of the general fund of the association, which fund was composed, among other things, of regular annual assessments levied on the shareholders of the association in proportion to the amount of stock held by them, and which were paid by them in the usual course of business. All of the shareholders who had paid cash, as well as those who had given their notes as aforesaid, paid these regular assessments annually over a period of approximately five years. During this period, plaintiff sold a certain portion of the land held by it to various parties, among them being the defendants in the present case. These sales were not made at the same time, but at varying periods, so that some of the regular assessments made during the five years in which the loan was being repaid were paid by plaintiff and some by the defendants after their purchase of these lands.

On April 5, 1937, the loan having been fully repaid, the association passed a resolution which, after various recitals as to the transaction in question and the fact that the loan had been repaid, resolved as follows:

"THEREFORE, BE IT RESOLVED, that said special assessment of $5.00 per share levied by the Board of Governors with the approval of the Council on the 25th day of August, 1932, be, and the same is hereby cancelled and the lien thereof against the shares of the capital stock appurtenant to the lands of the shareholders of the Salt River Valley Water Users' Association be, and the same hereby is released.

. . . . . . . . . . . .
"THEREFORE, BE IT RESOLVED, that the Treasurer be, and he hereby is authorized and instructed to mark all of said notes cancelled and hold the same for delivery to the makers thereof, and

"BE IT FURTHER RESOLVED, that the Treasurer be, and he hereby is authorized and instructed to

refund the amount of said Special Assessment to those who are the owners of the land on the date when said Special Assessment was canceled, to-wit, April 5, 1937, and to which the shares of the capital stock of this Association are appurtenant on said date, and on which said Special Assessment was paid in cash.

"The said Treasurer is further authorized and instructed to pay in addition to the amount of said Special Assessment, to-wit, Five Dollars ($5.00) per acre, simple interest on said amount at the same rate per annum paid on the loan from the Reconstruction Finance Corporation from the date said Special Assessment was paid to and including the 5th day of April, 1937.

"The said Treasurer is further authorized and instructed before paying said amount to secure from the owner of said land, or other person legally claiming said amount, an indemnity agreement, agreeing to indemnify and protect the Association against liability on account of any claim or claims made against the Association by any other person claiming the amount alleged to be due, and to repay the Association any such amount that any such other person may recover from said Association on account of the payment of said Special Assessment.

"BE IT FURTHER RESOLVED, that as to those who are now the owners of lands on which said $5.00 an acre assessment was paid, and who were not the owners at the time said $5.00 assessment was paid, that before the Treasurer refunds said amount that such owner or owners file with the Treasurer a statement in a form satisfactory to the Treasurer signed by the person who paid said $5.00 assessment, that such person disclaims any right, title, or interest in and to said proposed refund."

Most of the purchasers of land from plaintiff signed the statement disclaiming any right or interest in the refund above referred to, but defendants refused to do so, claiming that it was due to them as the owners of the land at the time of the adoption of the resolution of refund. Thereafter this suit was brought by plaintiff.

The association admits frankly that it owes to some person the amount of the special assessment paid in cash by plaintiff, together with interest thereon, as provided in the resolution above set forth. It, however, was uncertain as to whether it should be paid to plaintiff or defendants, and, therefore, asked that the latter be made parties. Its interest, therefore, is, in effect, that of a mere stakeholder, the real litigation being between the plaintiff and named defendants.

The question for our consideration is whether, under all the facts of the case, the refund is due to the plaintiff who actually paid the cash assessments to the association in 1932 because it was the owner of certain stock and the land which it represented at that time, or whether it is due to the defendants who, after such date but before the resolution of April 5, 1937, purchased such land and stock from plaintiff.

It is first urged by defendants that this court should not consider any of the assignments of error, for the reason that they are based upon a theory of the case not presented by the pleadings in the lower court and which was not litigated in that court. We have examined the record on this point, and while it may, perhaps, be technically true that the original complaint does not set forth fully the theory presented on this appeal, yet all of the proceedings after the filing of the original complaint, including the statements made by counsel in the lower court, show very clearly that the real matter in issue in that court and the one which was litigated was the same as that presented to us by plaintiff in this appeal. We, therefore, consider the case on its merits.

As is well known, under the articles of incorporation of the association the shares of stock issued by it are inseparably attached to the land which it irrigates, at the rate of one share to each acre of land. In case of the transfer of the title to the land, section 9

of article V of the articles of incorporation of the association provides as follows:

"Every transfer of the title to any lands to which the said rights and stock are so appurtenant, whether by grant or by operation of law (except where the land may be subjected by grant or involuntarily under any law to an easement, the exercise of which does not interfere with the cultivation of the soil by the servient owner) shall operate, whether it be so expressed in the grant or other means of transfer or not, as a transfer of all rights to the use of water for the irrigation of said lands, and all rights arising from, or incident to, the ownership of such stock, and as well the stock itself, to the grantee or successor in title of said lands, and upon presentation to this Association of proof of any such transfer of land, to which such rights are appurtenant, the proper officer shall transfer such stock upon its books to the successor in title to said lands."

It is the theory of defendants and the association that, by reason of this provision of its articles, when plaintiff transferred the land which it owned at the time of the special assessment to defendants, such transfer carried with it not only the shares of stock, which by the section are expressly stated to pass, but also the right, if any, to a refund of the special assessment, for the reason that such right, if it existed, was a right "arising from or incident to the ownership of such stock."

It is the position of plaintiff that the section referred to was not intended to cover such rights as those in litigation in the present action, for the reason that such a construction would be highly inequitable, and would constitute a preference to some stockholders as against others in the same situation. Plaintiff further alleges that it paid the cash assessment with the special stipulation that if a refund was made it should come to plaintiff, regardless of the ownership of the

land at the time the refund was made, and that even though the employees of the association, who received the money and gave receipts containing that provision, might not have been authorized to bind the association, the latter cannot retain the money and at the same time repudiate the acts of its agents in accepting it with the proviso contained in the receipt. The facts of this case are *sui generis,* for so far as we are aware there is no corporation in the United States with a charter exactly like that of the association. An analogous question has arisen, however, in many cases where a right to the payment of money in the future arose. It has been held very generally in such cases that the right was in the stockholder as of the date it first arose, and not of the stockholder at the time when it became finally due and payable. *Jerome* v. *Cogswell,* 204 U. S. 1, 27 Sup. Ct. 241, 51 L. Ed. 343; *Atwood* v. *Huff,* 130 Va. 624, 108 S. E. 562; *Redhead* v. *Iowa National Bank,* 127 Iowa 572, 103 N. W. 796; *Cogswell* v. *Second National Bank,* 78 Conn. 75, 60 Atl. 1059; *Wheeler* v. *Northwestern Sleigh Co.,* (C. C.) 39 Fed. 347. *Neer* v. *Salem,* 77 Or. 42, 149 Pac. 476, seems to hold to the contrary. In that case, however, there was a specific ordinance directing to whom the repayment should be made, and the equities were said by the court to be with the prevailing party. There is no such statute nor ordinance here, and we think the facts show clearly that the equities in this case are with plaintiff.

If the refund is made to the defendants, and not to plaintiff, we have a situation where it has actually paid out five dollars per share for which it has received no return, while the other shareholders as of the time when the money was paid by plaintiff have had their notes cancelled and thus have paid nothing. This is obviously a preference to one group of shareholders

as against another, arising out of a transaction occurring when all were shareholders with the same rights. If the cash refund is a benefit which passes with the sale of the land and stock, then equally the notes of those who sold their land before the notes were finally cancelled should have been delivered to the purchasers of that land, so that they might recover the five dollars per share from the makers of the notes. We are satisfied that section 9 of article V, *supra*, was never meant to cover such a situation, and that the rights of the shareholders to any refund, whether in cash or in cancelled notes, vested as of the time when the cash was paid and the notes delivered, so that defendants are no more entitled to have the cash paid by their grantors refunded to them than other purchasers would be to have the notes given by their grantors delivered to them for collection. *Seale* v. *Berryman*, 46 Ariz. 233, 49 Pac. (2d) 997, 101 A. L. R. 613, is not in point, for each of defendants testified they did not know of a possible refund when they purchased their land and their deeds contained no recitals indicating that any refund should go to them.

Further than that, we think the second proposition of plaintiff is sound. It paid the assessment to the association with the understanding and stipulation that if a refund was made, it should come to plaintiff, regardless of who was the owner of the land at the time of the refund. It may be that the agents of the association, who received the cash, were not authorized to make such a stipulation, but if that be true and the association wishes to take advantage of that fact, it must return the cash assessment, for a principal may not repudiate the authority of his agent and at the same time retain the benefit of what the agent obtained for the principal by virtue of such authority.

The judgment of the superior court is reversed, and the case remanded with instructions to render judgment in favor of plaintiff, in accordance with the principles herein expressed.

ROSS, C. J., and McALISTER, J., concur.