500 P.2d 320

**PHOENIX WESTERN HOLDING CORPORATION, an Arizona corporation, Appellant,**

v.

**L. D. A. GLEESON and Tresa A. Gleeson, his wife, L. Ted Sloane and Alice R. Sloane, his wife, Appellees.**

**No. I CA–CIV I696.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 22, 1972.

David B. Bartell, Phoenix, for appellant.

Hill & Savoy by John P. Otto, Phoenix, for appellees Gleeson.

Hughes, Hughes & Conlan by John C. Hughes, Phoenix, for appellees Sloane.

STEVENS, Presiding Judge.

■ This is an appeal from the judgment entered on 1 December 1970 in favor of the third-party plaintiffs, Gleeson, and against the third-party defendant, Phoenix Western Holding Corporation, in the amount of $11,110.54. Though questions have been raised on appeal with regard to the cross-defendants Sloane, the merits of these issues will not be discussed in this opinion inasmuch as an appeal based upon the cross-defendant's motion to dismiss which was granted by minute entry order is, at this time, premature, Eaton Fruit Company v. California Spray-Chemical Corporation, 102 Ariz. 129, 426 P.2d 397 (1967).

In view of the procedural circumstances of this case, i. e., there are multiple parties, cross-claims and third-party claims, the facts will be set forth in some detail.

On 9 January 1967 a complaint was filed by G. E. C. C. Leasing Corporation (hereinafter referred to as GECC) against the Sloanes and the Gleesons which alleged that the defendants had defaulted in the performance of a lease agreement into which they had entered. The chattels included in the lease had been repossessed and sold at public sale leaving a deficiency of $7899.27 due, owing and payable to GECC. It was for this amount that GECC sought judgment against the defendants.

The defendants Gleeson filed an answer and third-party complaint on 30 January 1967 in which they alleged that Phoenix Western Holding Corporation (hereinafter referred to as Phoenix) had agreed to make the payments due under the subject lease in consideration for a quitclaim deed executed by the third-party plaintiffs in favor of Phoenix. The evidence submitted as proof of the assumption of this obligation was a letter addressed to the Gleesons that was written on the corporation's letterhead and signed by John Clegg the president of Phoenix. There is a factual dispute as to how the letter came into the possession of Gleeson.

On 9 March 1967 Phoenix filed its answer to the third-party claim, and denied that it had agreed to make the payments under the GECC lease. Phoenix also asserted that the actions of Clegg, the president of Phoenix, were taken without the approval or consent of the corporation's Board of Directors and that the third-party plaintiffs Gleeson were fully aware of the circumstances surrounding the execution and delivery of this letter to Gleeson.

GECC's motion for summary judgment against the defendants Gleeson was filed on 11 May 1967, granted on 29 May 1967 and subsequently converted to a formal written judgment. A satisfaction of judgment against the defendants Gleeson was filed on 19 October 1967.

On 16 May 1967 the Gleesons, as third-party plaintiffs, moved for summary judgment against Phoenix but their motion was denied on 28 August of the same year. The case subsequently came up for trial before the court sitting without a jury upon the Gleeson third-party complaint against Phoenix. The judgment which resulted from this trial is the subject of this appeal.

Though a substantial legal question has been raised, i. e., whether the letter delivered to Gleeson which was signed by the president of Phoenix constituted an agreement by that corporation to assume the Gleesons' obligations to GECC under the terms of the subject lease, there is a procedural issue that has been presented by the appellant which must be resolved in favor of the appellees if this Court is to reach the merits of this appeal.

It is argued by Phoenix that the trial court misplaced the burden of proof during the trial when it stated that the burden of proving lack of a corporate ratification of Clegg's letter was a defense that should be proved by the defendant, Phoenix, the appellant herein. The basis for this argument is found in the trial transcript wherein the following exchange took place.

"MR. SAVOY: If the Court please, the Third Party Plaintiff rests.

**64**

"THE COURT: All right. You may proceed, Mr. Abbey.

"MR. ABBEY: (Attorney for Third Party Defendant, Phoenix Western Holding Corporation) I would briefly move to dismiss on the basis that there is no showing that the letter which the Third Party Plaintiff relies upon as being authority for the corporation to assume this obligation, no evidence is before the Court (that) this is a corporate obligation, but only a letter signed by an officer of the company and no indication of ratification or instructions by the Board of Directors which is a legal prerequisite to a legal act of this nature and the Third Party Plaintiff failing to show that the corporate assumption, then they fail in the necessary proof and I move the action be dismissed on that basis.

"THE COURT: I don't think the burden is on them to prove that. That is your defense, isn't that right?

"MR. SAVOY: Yes, that's the defense, but they accepted the deed to the property.

"THE COURT: But he wants you to prove that.

"MR. SAVOY: They had the authority to sign the letter.

"THE COURT: I don't think it's your burden.

"MR. SAVOY: That's not our obligation.

"THE COURT: That's what I'm saying, that's not your burden.

"MR. ABBEY: Call Mr. Clegg to the stand, Your Honor."

It is clear from this excerpt that the trial judge was of the opinion that the burden of proof as to insufficient authority to bind the corporation, lack of ratification by the corporation or the absence of an agency by estoppel was on the corporation as part of its defense rather than on the third-party plaintiffs, as part of their *prima facie* case, to prove sufficient authority, ratification by the corporation or an agency by estoppel. We disagree with the trial court.

## THE BURDEN OF PROOF

The principal issue involved herein with regard to the burden of proof is the issue of agency. To put the question, when an agent is alleged to have bound his principal by acting within the scope of his authority, who has the burden of proof; i. e., does the defense have the burden to prove lack of authority, or does the third-party plaintiff have the burden to prove the presence of the agency?

The early case of Brutinel v. Nygren, 17 Ariz. 491, 154 P. 1042 (1916), in commenting upon the burden of proof of a litigant who attempts to bind a principal by the acts of his agent noted that such a person is bound to ascertain:

"* * * not only the fact of agency, but the nature and extent of the authority, *and in case either is controverted the burden of proof is upon him to establish it.*" 17 Ariz. at 500, 154 P. at 1046. (Emphasis added). Accord, Litchfield v. Green, 43 Ariz. 509, 33 P.2d 290 (1934).

The preceding language was also quoted with approval and referred to as the general and important rule in the case of United States Smelting, Refining and Mining Exploration Company v. Wallapai Mining and Development Company, 27 Ariz. 126, 230 P. 1109 (1924). In City of Phoenix v. Linsenmeyer, 86 Ariz. 328, 346 P.2d 140 (1959), the Arizona Supreme Court stated that the rationale of Brutinel is applicable in cases which involve an agency question whenever the defense of lack of authority or action taken *ultra vires* is raised.

Inasmuch as Phoenix in its answer to the third-party complaint filed by the Gleesons did allege that the letter which purportedly binds them to assume the obligation of the third-party plaintiffs under the GECC lease was delivered without corporate approval or authorization, the burden of proof as to both the fact of an agency and the scope thereof rested with

the third-party plaintiff. Based upon the foregoing, it is our opinion that the trial court erred as a matter of law when it ruled that the burden of proof was on Phoenix.

## WAS PHOENIX PREJUDICED BY THE TRIAL COURT'S ERRONEOUS RULING AS TO THE BURDEN of PROOF?

The question remains however, as to the effect of such a ruling since it is the law of this jurisdiction that no cause will be reversed for formal error, when upon the whole case it appears that substantial justice has been done. In Arizona, prejudice will not be presumed but must appear from the record. State ex rel. Willey v. Whitman, 91 Ariz. 120, 370 P.2d 273 (1962); Webb v. Hardin, 53 Ariz. 310, 89 P.2d 30 (1939). In order to justify a reversal the error must be prejudicial to the substantial rights of the appellant. Employment Security Commission v. Doughty, 13 Ariz.App. 494, 478 P.2d 109 (1970).

With regard to the issue of prejudice the argument has been made that Phoenix was prejudiced when it was faced with the presentation of a defense as a result of placing the burden of proof on its shoulders. This Court is unable to agree because Phoenix had the option of resting after the close of the third-party plaintiffs' case. This would have been a proper method of testing on appeal the trial court's ruling as to the burden of proof. Instead Phoenix chose to present its defense rather than argue on appeal that it was entitled to have the case dismissed at the close of the third-party plaintiffs' case because the burden of proof had not been met. This argument is still available but the related rationale that prejudice resulted because of presentation of a defense without regard to the merits of the trial court's ruling seems to us to be logically inconsistent in view of the circumstances of the case.

Inasmuch as the trial court when sitting as the trier of fact has the discretion to decline to render any judgment until the close of all the evidence even when a motion to dismiss is made at the close of a plaintiff's case, Rule 41(b), Rules of Civil Procedure, 16 A.R.S., and because Phoenix chose to present its defense rather than submitting the case on the third-party plaintiffs' proof with the argument that no *prima facie* case had been presented which could satisfy the third-party plaintiffs' burden of proof, we will examine all of the evidence presented in our search for any prejudicial error which if present, could warrant a reversal in this case.

Because of the foregoing, we deem the dispositive issue in this case to be whether the evidence presented by both parties supports the judgment entered by the trial court that Phoenix was obligated to make the payments due under the GECC lease. If our conclusion in this regard is in the affirmative, Phoenix cannot argue that the prejudice to which it was exposed was reversible error since substantial justice will have been accomplished even though the burden of proof was improperly assigned.

## IS THE TRIAL COURT'S JUDGMENT REASONABLY SUPPORTED BY THE EVIDENCE?

In order to sustain the trial court's judgment, the evidence must show that Clegg was acting as the authorized agent of Phoenix and conducting himself in a manner within the scope of his authority at the time he executed the letter in question.

An agency may be proved to exist in four ways. Land-Air, Inc. v. Parker, 103 Ariz. 1, 435 P.2d 838 (1967).

First, by direct evidence of an express contract of agency between the principal and the agent. There is no direct evidence that there was any specific contract between Clegg and Phoenix which authorized the former to execute the letter which allegedly obligated Phoenix to make payments under the GECC lease.

The second method by which agency may be proved is by proof of facts which raise the implication of such a contract. Agency is susceptible of proof as is

any other fact and may be established from the circumstances, such as the relation of the parties to each other and to the subject matter, their acts and conduct. A word of caution is in order here in that declarations of an alleged agent, be they oral or written, are not evidence of the fact of agency or the extent thereof. Litchfield v. Green, 43 Ariz. 509, 33 P.2d 290 (1934).

> " 'The agency must be proved by other evidence before his (the agent's) acts and statements can be shown against the principal. At best such declarations are mere hearsay. The rule applies equally to oral statements of the agent and the written statements, contained in letters, letterheads, receipts, or other documents implying, admitting, or claiming authority to act as agent in the negotiations with the third person.' " United States Smelting, Refining, and Mining Exploration Company v. Wallapai Mining and Development Company, 27 Ariz. 126, 130, 230 P. 1109, 1110 (1924).

In United States Smelting it was also noted that the mere fact that one is a *director, president, secretary* or other officer of a corporation does not make all his acts or declarations, even though relating to the affairs of the corporation, binding upon the latter.

> " ' * * * [T]he nature and extent of an agent's authority * * * ultimately may be established only by tracing it to its source in some word or act of the alleged principal. The agent certainly cannot confer authority upon himself, or make himself agent, merely by acting as such or saying that he is one.' " Bank of America, National Trust & Savings Association v. Barnett, 87 Ariz. 96, 100, 348 P.2d 296, 299 (1960).

With these authorities in mind, our review of the record has failed to reveal any conduct or activities on the part of Phoenix which could imply the existence of a contract between principal and agent by which Clegg was authorized to bind Phoenix by affixing his signature, as president of the corporation, to the letter of 7 December 1964.

■ We now turn our attention to the principle of ratification which is the third method by which an agency may be established.

> "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Restatement of Agency 2d § 82 (1958).

> "A 'ratification' is the subsequent approval by a principal of a previous unauthorized act by one claiming to act as an agent, and in such case it is immaterial whether there had been an alteration in the position of the parties." Young Mines Company, Ltd. v. Citizens' State Bank, 37 Ariz. 521, 528–529, 296 P. 247, 250 (1931) .

There is also Arizona authority to the effect that accepting the benefit of an unauthorized act of one purporting to act as an agent without authority, when with knowlege of the material facts, amounts to a ratification. Hartman v. Oatman Gold Mining & Milling Company, 22 Ariz. 476, 198 P. 717 (1921). When Hartman and Young are viewed together, it appears that a ratification can occur by acceptance of the benefits of an allegedly unauthorized act when accompanied by knowledge of material facts since such amounts to a subsequent approval of the act by the principal who seeks to avoid liability.

■ With regard to proof of an agency by ratification, the following facts are established by the record. The quitclaim deed which conveyed the property to Phoenix was executed on 4 December 1964 by Mr. and Mrs. Gleeson and Mr. and Mrs. L. Ted Sloane, the latter two persons being two of the five members of the board of directors of Phoenix. However, this evidence cannot be used to support a ratification theory of agency inasmuch as the deed was executed prior to the acts of

Clegg which allegedly bound Phoenix and cannot therefore be interpreted as subsequent approval thereof.

Nor can the fact of Clegg's execution of the letter on 7 December 1964 be used to substantiate a ratification by Phoenix for the reasons stated in Litchfield v. Green, supra, to the effect that an agent certainly cannot confer authority upon himself or make himself agent, merely by acting as such, or saying that he is one. Proof of the existence of an agency rests upon evidence of the acts or words of the principal and not the agent. The policy rationale in support of this rule was well stated in Franklin v. Havalena Mining Co., 18 Ariz. 201, 157 P. 986 (1916).

"Unless the rule be properly guarded, and the facts of each particular case placed within the required limitations as to when one should be bound by the acts and statements of another, the mere fact that one is an officer or agent of a corporation would empower him indirectly to turn over the entire corporate property to third persons. The officers of corporations are agents, and the rule admitting their statements in evidence is founded upon the doctrine of agency, and their declarations, to be binding upon the corporation, must be made in the course of or connected with the performance of the authorized duties of such officers." 18 Ariz. at 207, 157 P. at 988.

As was the case with the corporate officer in Franklin, the action taken by Clegg was not expressly authorized by Phoenix, nor was it shown that his execution of the subject letter was authorized by implication as a natural and ordinary incident of the corporate office which he occupied or that it was connected in any manner with the discharge of his duties as president of Phoenix.

There is testimony in the record by Clegg in which he admits signing the letter " * * * obviously subject to a Board of approval, which is the only way you can handle it corporately." Clegg also stated that none of the matters with respect to the rents, the letter, sale of the Linda Luego, the repairs and the quitclaim deed were ever submitted to any of the board members of Phoenix for their consideration with the exception of Sloane.

Though it is the opinion of this Court that the evidence thus far presented does not reasonably support a finding of agency on the basis of a ratification theory, there is the additional fact that the quitclaim deed which was executed on 4 December 1964 as the consideration for Clegg's letter of 7 December 1964 was recorded on 11 December 1964 at the request of Phoenix. Even this fact does not reasonably support an agency by ratification theory since there has been no showing that such request was made by a majority or even by one of the members of the board of directors of Phoenix.

Our analysis thus far with regard to the possibility of establishment of an agency by ratification under the facts of this case has not been undertaken without due regard for the Hartman case, supra, in which it was said that accepting the benefit of an unauthorized act of one purporting to act as an agent without authority, when with knowledge of the material facts, amounts to a ratification.

With regard to Hartman, the pertinent portion of that decision relies upon § 455 of Elliott on Contracts (1913) for the rule that a principal cannot avail himself of such acts as are beneficial to him and repudiate the burdens which accompany such acts. "When a principal elects to ratify an unauthorized act, he must ratify the whole of it. * * * The principal must repudiate absolutely or be bound absolutely." Elliott on Contracts § 455 (1913). The import of this rule was also followed in Valley National Bank v. Salt River Valley Water Users' Association, 54 Ariz. 199, 94 P.2d 647 (1939) in which it was stated that:

" * * * a principal may not repudiate the authority of his agent and at the same time retain the benefit of what the agent

obtained for the principal by virtue of such authority." 54 Ariz. at 207, 94 P.2d at 650.

As was the case in Hartman, the facts of Valley National Bank support the conclusion that the principal who was bound in each of these cases had full knowledge of the agent's acts at the time they were undertaken. As stated in Elliott on Contracts at pages 676–77 of volume 1:

"A degree of caution must be exercised, however, in the application of this rule. *Knowledge of all material facts is essential to a ratification of the unauthorized acts of an agent unless the principal intentionally and deliberately ratifies knowing he is without knowledge of all such facts.*" (Emphasis added).

In the instant case, there is no indication in the record that corporate knowledge of either Clegg's action or that of Sloane in collecting the rents from the Linda Luego apartments for the benefit of Phoenix was, in fact, a reality. The testimony is uncontradicted that no meeting of the board of directors of Phoenix was held at which the assumption of the GECC obligation signed by Clegg was ratified and that no instructions were ever given to any of the officers to assume such obligation. In the absence of any corporate action of a character similar to that just discussed, this Court is unable to hold that a ratification of Clegg's act in executing the subject letter occurred simply because the deed was recorded in the name of Phoenix or because Sloane continued to collect the rents from Linda Luego as he did before the 7 December 1964 letter was executed. There has been no showing of a corporate ratification of either the property transfer or the collection of rents after the transfer.

We are not unmindful of the language of the Court in the case of Miller v. Boeger, 1 Ariz.App. 554, 405 P.2d 573 (1965), with regard to the law of agency in which it is stated that:

" 'The general rule that a principal who accepts, or fails to restore, the bene-fits of an agent's unauthorized act shall be deemed to have ratified the same may be applicable so as to work a ratification regardless of the actual intent of the principal in the particular case, and is, accordingly, applicable notwithstanding his protestations or expressions of disapproval or repudiation of his agent's unauthorized act where the principal continues to retain the benefits which he obtained as a result of such act.' " 1 Ariz.App. at 557, 405 P.2d at 576.

However, our review of the treatise from which this language was taken reveals that as is the case with the majority of general rules there is an exception which, under the circumstances of this appeal, is most applicable.

The general rule stated above is not applicable so as to work a ratification of an agent's acts from which the benefit is received where the circumstances surrounding the receipt of a benefit are not such as reasonably tend to show an intention to ratify, or where receipt of the benefit is under circumstances which are as consistent with an intent not to ratify as to ratify. Moreover the principle that ratification follows retention of benefits received is not applicable if the principal receives a benefit the return of which is not possible. 2 C.J.S. Agency § 49 (1936).

Since this Court is confronted with a lack of evidence upon which to reasonably support a finding of agency by a ratification theory, we are unable to affirm the trial court on this basis.

The fourth and final method by which an agency may be established is that of an estoppel, but here again the acts creating the estoppel must be done by the principal with knowledge or a reasonable ground for believing that the other party will rely thereon and change his position for the worse. Litchfield v. Green, supra.

In this case, the signing of the letter by which Phoenix could be arguable estopped was an action taken by an agent, Clegg,

and not by the corporate principal, Phoenix. Inasmuch as the evidence presented fails to reasonably support a conclusion that Clegg's execution of the subject letter was in reality an action taken by him with the knowledge of and for the benefit of Phoenix, the holding of the trial court cannot be upheld on an agency by estoppel theory.

■ Lest judicial critics deem this decision unreasonably severe when it is reviewed by them with knowledge of those facts that were presented to the trial court, it must be remembered that it is the party who seeks to bind a principal by the acts of his agent who must "stop, look and listen" when entering into a transaction with an agent where authority has not been established.

This opinion does not hold that under circumstances similar to those herein presented a ruling of the trial court binding a principal by the acts of his agent could not be affirmed, but rather that under the evidence presented during the course of the trial in this case this Court is unable to conclude that the judgment is reasonably supported by the evidence.

Based upon the foregoing conclusion, it necessarily follows that the third-party defendant was prejudiced to the point of reversible error when the trial court improperly assigned the burden of proof as to the existence or non-existence of a binding agency inasmuch as our review of the entire record does not allow us to affirm the trial court's judgment that the principal herein should be bound by the acts of the agent. If the record indicated that the third-party plaintiff had presented a *prima facie* case or that the evidence put on by the defense supported a conclusion of agency, substantial justice would have been done even though the burden of proof had been misplaced.

Neither of these possibilities is a reality and we are thus compelled to reverse for proceedings not inconsistent with this opinion.

CASE and DONOFRIO, JJ., concur.