## CONTEL OF ARKANSAS, INC. *v.* ARKANSAS PUBLIC SERVICE COMMISSION

CA 91-108                                        822 S.W.2d 850

Court of Appeals of Arkansas
En Banc
Opinion delivered January 22, 1982

*Chisenhall, Nestrud & Julian, P.A.*, by: *Lawrence Chisenhall*; and *Brydon, Swearengen & England, P.C.*, by: *W.R. England III*, for appellant.

*Kenny W. Henderson*, for appellee.

ELIZABETH W. DANIELSON, Judge. Appellant, Contel of Arkansas, Inc., a telephone utility serving approximately 75,000 Arkansas ratepayers, appeals from a decision of the Arkansas Public Service Commission, appellee, involving Contel's application for a general rate increase. Contel contends the Commission erred in calculating its cost of equity by including in its parent corporation's capital structure accrued common stock dividends payable as a zero-cost source of funds.[1] Alternatively, Contel argues that the Commission's use of a 105-day lag time during which Contel had the use of any zero-cost funds is erroneous. We affirm on the first point and reverse and remand on the second.

Contel of Arkansas contends that, by including about $50 million in accrued common stock dividends at zero cost in Contel Corporation's capital structure, the Commission denied it any

---

[1] Contel of Arkansas, Inc., is a wholly-owned subsidiary of Contel Corporation; as such, its stock is not market-traded, and Contel Corporation's cost of capital is imputed to be Contel of Arkansas' cost of equity.

return on those funds by reducing Contel of Arkansas' return on equity. Appellant claims that the record demonstrates that dividends are paid out of retained earnings and, because retained earnings are the property of the shareholders, they have a cost associated with them.

The Commission, in response, argues exclusion of dividends payable as urged by Contel would allow a double return on the same money because of recognition of the lag in payment of common stock dividends. It says that stockholders are implicitly compensated through the allowed return on common stock and that investors expect a lag in receiving dividends, and this is recognized in the methodology used to calculate Contel Corporation's cost of equity.

■ Because of the limited scope of our review, we are compelled to affirm as to the first point. In *Southwestern Bell Telephone Co.* v. *Arkansas Public Service Commission*, 24 Ark. App. 142, 144, 751 S.W.2d 8 (1988), we said:

> This court is generally not concerned with the method used by the Commission in calculating rates as long as the Commission's action is based on substantial evidence. It is the result reached, and not the method used, which primarily controls. If the Commission's decision is supported by substantial evidence and the total effect of the rate order is not unjust, unreasonable, unlawful or discriminatory, judicial inquiry terminates. *Southwestern Bell*, 19 . Ark. App. at 327, 720 S.W.2d at 927; *Southwestern Bell Tel. Co.* v. *Arkansas Pub. Serv. Comm'n*, 18 Ark. App. 260, 715 S.W.2d 451 (1986); *Walnut Hill Tel.*, 17 Ark. App. at 265, 709 S.W.2d at 99.

This court also observed in *Southwestern Bell Telephone Co.* v. *Arkansas Public Service Commission*, 18 Ark. App. 260, 715 S.W.2d 451 (1986): "If the total effect of the rate order cannot be said to be unjust, unreasonable, unlawful or discriminatory, judicial inquiry is concluded, and infirmities in the method employed are rendered unimportant." In *General Telephone Co.* v. *Arkansas Public Service Commission*, 295 Ark. 595, 599-600, 751 S.W.2d 1, 3 (1988), the supreme court stated that, while it would reverse a decision where confiscatory ratemaking was evident, it was not concerned with the method the commission

used to determine the rate needed to supply the company adequately with working capital; since the commission's decision fell within the "zone of reasonableness," the court could not find it was confiscatory.

■ Therefore, given the above limitations on our scope of review, we cannot agree with appellant's first point on appeal. While the appellee's methodology may well be infirm, the record before us does not manifestly demonstrate that the 10.61% return on equity calculated for appellant differs so markedly from the 10.83% it claims is appropriate as to warrant judicial interference. The result reached by the appellee was based on testimony of expert witnesses who asserted that, because investor expectations with regard to dividends are addressed in the various calculations used in deriving the rates to be charged by appellant, inclusion of dividends payable at zero cost is appropriate. While the company vehemently contests this position, we cannot conclude on the record before us that the Commission erred in this regard.

However, we agree with appellant in its claim that the 105-day lag period adopted by the appellee is erroneous, and reverse on that point. As noted, the Commission calculated a lag period of 105 days during which Contel Corporation theoretically had the use of the funds represented by common stock dividends payable. It calculated this period on the assumption that money is collected by Contel Corporation on an even daily basis during a ninety-day calendar quarter; thus, Contel Corporation has the use of these funds on average for half the quarter, which is forty-five days. The Commission then added that period to the sixty-day lapse between the end of the quarter and the date of actual payment of the dividends and arrived at a 105-day period.

Contel argues that this period is overstated and not supported by the evidence because, accepting that common stock dividends payable are zero-cost funding sources, the liability representing these sources of funds does not come into existence until the dividend is declared. In this case, the dividend was declared only twenty-three days prior to the payment date, and Contel contends that this twenty-three days is the lag period supported by the evidence. Contel also points out that, until the dividend is declared and a funding source liability bearing zero

cost is thereby created, the funds represented thereby are retained earnings upon which a return should be earned.

The Commission's position is that, as with the first point on appeal, the 105-day lag period recognizes investor expectations and prevents appellant from earning two returns on the same funds. It says that, because a portion of every day's collections during a calendar quarter preceding payment of a dividend actually fund the dividend when paid, the company has the use of the funds for the period as calculated by the Commission.

Although we realize the limitations on our review, we must hold that the Commission's use of a 105-day lag period in this case is unreasonable, unjust, and not supported by substantial evidence. Although an expert witness testified in support of the rationale for a 105-day lag period, that same witness acknowledged the zero-cost liability representing dividends payable did not exist until the date the dividend was declared, which, as noted previously, was twenty-three days before payment.

Recognizing that utility ratemaking is an inexact art and of necessity involves judgment calls and educated surmise from time to time, *Arkansas Electric Energy Consumers* v. *Arkansas Public Service Commission and Arkansas Power and Light Company*, 35 Ark. App. 47, 813 S.W.2d 263 (1991), theory must at some juncture give recognition to reality. The theory as to the use of monies earning a return which eventually become zero-cost liabilities must recognize the reality that they cannot become zero cost under the ratemaking theory used in this case until such time as they in fact become liabilities, which is the date the dividend is declared. *See Anadarko Petroleum Corp.* v. *Panhandle Eastern Corp.*, 545 A.2d 1171, 1175 (Del. 1988); *St. Charles Bdg. & Loan Ass'n* v. *Webb*, 229 S.W.2d 577, 581 (Mo. 1950); *Benas* v. *Title Guar. Trust Co.*, 267 S.W. 28, 29 (Mo. Ct. App. 1924); *Gallagher* v. *Butler*, 378 S.W.2d 161, 167 (Tenn. 1964); *Atwood* v. *Huff*, 108 S.E. 562, 564 (Va. 1921). As demonstrated by the undisputed evidence in this case, the zero-cost liability (represented by common stock dividends payable) came into existence twenty-three days before the date it was paid, and a lag period of twenty-three days is, therefore, appropriate.

The decision of the appellee as to appellant's Point I for reversal is affirmed; the decision as to allowing a 105-day lag

period is reversed, and this case is remanded with directions that a lag period of twenty-three days be used in calculating common stock dividends payable.

Affirmed in part; reversed and remanded in part.

COOPER, J., concurs.