460 P.2d 200

**COMMERCIAL ENGINEERING CORP. of Arizona, an Arizona corporation, Appellant,**

v.

**MADISON CHEVROLET, INC., an Arizona corporation, Appellee.**

**No. I CA–CIV 739.**

Court of Appeals of Arizona, Division 1.

Department A.

Nov. 3, 1969.

Rehearing Denied Nov. 24, 1969.

Review Granted Dec. 23, 1969.

Otto H. Linsenmeyer and Frank E. Dickey, Jr., by Frank E. Dickey, Jr., Phoenix, for appellant.

Bellamak, Zepp & Mitchell, by Ferris W. Bellamak, Scottsdale, for appellee.

CAMERON, Judge.

This is an appeal by the defendant, Commercial Engineering Corporation of Arizona, from the granting of plaintiff's motion for partial summary judgment. We

are called upon to determine whether under the facts in the instant case the trial court committed error in granting the plaintiff's motion for partial summary judgment.

On 25 March 1965 the defendant, Commercial Engineering Corporation of Arizona, acting through its officers, and plaintiff, Madison Chevrolet, Inc., entered into an agreement for the purchase of five automobiles. The purchase price was $17,474.83 which included taxes, licenses, and all other items necessary for a complete transaction. Payment was by a $15,000 time deposit certificate on the British Colonial Bank of Commerce (Bahamas), Ltd., payable on 2 September 1965, plus three cashier's checks. The defendant was given a receipt for the amount of $17,474.83. The purchase order stated at the bottom, "THIS ORDER IS NOT BINDING UNTIL ACCEPTED BY DEALER". Below this, two lines were filled as follows: after "PURCHASER'S SIGNATURE", "Commercial Engineering Corporation, By (signature illegible)"; and after "ACCEPTED BY", "Time deposit certificate okayed (signature illegible) (DEALER)".

Defendant took possession of the automobiles and the next day the plaintiff, evidently having second thoughts about the acceptance of the time deposit certificate, attempted to negotiate the certificate prior to the 2 September 1965 due date. The corresponding bank in Arizona was notified as follows:

"'Your Certificate of Deposit and collection requests are enclosed. It has been the policy of this Bank and instructions of our Board of Directors, that Certificates of Deposit will not be redeemed prior to maturity nor have we ever encouraged any market for these certificates through any other source.

"We are a relative (sic) small Bank, our funds are invested, and it does take a certain amount of time and expense to transfer from sterling to U. S. Dollars. Please advise your client to re-submit the certificate for collection at maturity.'"

On 9 April 1965 a suit in replevin based upon fraud was filed which resulted, on 22 June, in the Sheriff taking into possession two of the automobiles. Defendant answered and moved to dismiss supported by an affidavit which denied that plaintiff was the legal owner of the automobiles. Plaintiff was allowed to file an amended complaint on 23 July to which defendant filed an answer and counterclaim (verified). A writ of attachment was issued and the return shows that the Sheriff attached the manufacturer's certificates of origin of the five vehicles which the defendant had given to the Motor Vehicle Department for licensing purposes. During this time the due date of the certificate passed and the certificate was presented and protested by a Notary Public in the Bahamas, which stated in part:

"On the Second day of September, 1965 at the request of the Chase Manhattan Bank, Nassau, Bahamas the holder of the original of a Time Deposit Certificate of which a true copy is attached hereto I, Paul Henry Bethel of the Western District of the Island of New Providence Notary Public by lawfully (sic) authority duly appointed and sworn did attend with the said Time Deposit Certificate at the last known Office of the British Colonial Bank of Commerce (Bahamas) Limited at the Caribbean Motors Building at West Bay Street in the Island of New Providence to demand payment thereof and found that the said British Colonial Bank of Commerce (Bahamas) Limited had left its premises without leaving a new address * * *."

During this time the depositions were also taken. The testimony of Mitchell M. Hazar, an officer of the defendant corporation, concerning the certificate of time deposit and the purchase of the five automobiles from plaintiff was in part as follows (Buss Williams was the salesman for plaintiff):

"Q Whatever you told Buss Williams regarding that CD, that's the only person you ever talked to about it?

"A  I didn't tell him anything.  I said, 'This is what we've got.  This is it. We've got this much cash and this in CDs and if you can'—

He says, 'I don't know, I've never seen one of these.  I don't know a thing about it.  The office will have to approve it.'

"Q  The only thing you told him about the CD was that it matures in six months?

"A  Six months."

After many other motions and activities with which we do not herein concern ourselves, the court granted plaintiff's motion for partial summary judgment, specifically finding that plaintiff was the lawful owner of the five vehicles.  The court retained jurisdiction for the purposes of implementing the judgment and "for the purpose of determining the amount of Plaintiff's monetary damage, if any."

### WAS THE MOTION PROPERLY GRANTED?

Rule 56(a) of the Rules of Civil Procedure, 16 A.R.S., allows the plaintiff to move for summary judgment.  Rule 56(c), as amended, reads:

"56(c) *Motion and proceedings thereon.* The motion shall be served at least 10 days before the time fixed for the hearing.  The adverse party prior to the day of hearing may serve opposing affidavits.  The judgment sought shall be rendered forthwith if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law.  A summary judgment, *interlocutory in character*, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

And 56(e), as amended, reads as follows:

"56(e) *Form of affidavits; further testimony; defense required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him."

In the instant case the motion for summary judgment was made by plaintiff based upon the "pleadings, depositions and affidavits already on file, together with the affidavits and memorandum attached to the motion."

The response of the defendant in opposition was not supported by affidavits and it is the contention of the appellee that this failure makes the granting of the motion mandatory on the court.  With this we do not agree.  The court may grant the motion only "if appropriate".  If, in the instant case, the response and the matters in the file raised a fact issue to be determined by the court the motion should not have been granted.  Our Supreme Court has stated:

"We have held that summary judgment is mandatory where the party opposing the judgment does not file affidavits in opposition to the affidavits filed by the moving party, unless the papers of the moving party fail to show he is entitled to judgment as a matter of law.  (citations omitted)."  Eastwood Electric Co. v. R. L. Branaman Contractor, Inc., 102 Ariz. 406, 410, 432 P.2d 139, 143 (1967).

The verified pleading of the defendant as well as the depositions and other matters presented by both the defendant and the plaintiff indicates to us that the plaintiff was not entitled to the motion for partial summary judgment. A time deposit certificate is generally considered to be a negotiable instrument and is in effect a promissory note of the issuing bank. Thompson v. Thompson, et al., 149 Tex. 632, 236 S.W.2d 779 (1951). See also Clark v. O'Neal, 231 Ala. 577, 165 So. 853 (1935).

■ Since the Uniform Commercial Code did not take effect in Arizona until 1 January 1968, this case is governed by the Uniform Negotiable Instruments Act as set out in 44 A.R.S.:

"§ 44–401. *Form of negotiable instrument*

"An instrument to be negotiable must conform to the following requirements:

"1. It must be in writing and signed by the maker or drawer;

"2. Must contain an unconditional promise or order to pay a sum certain in money;

"3. Must be payable on demand, or at a fixed or determinable future time;

"4. Must be payable to order of a specified person or to bearer; and

"5. Where the instrument is addressed to a drawee, he must be named or otherwise indicated therein with reasonable certainty."

In this case the time certificate of deposit was in writing and it was signed by the maker. It contained an unconditional promise to pay $15,000 plus interest at 4% per annum. It was payable to the order of the named registered owner, William R. Quinan, and it was payable on the determinable future date of 2 September 1965. Hence, this time certificate of deposit was in the form of a negotiable instrument.

We can rule as a matter of law that the time certificate of deposit was a negotiable instrument. Whether it was negotiated and under what conditions is a fact question which cannot be resolved by the motion for summary judgment. Under the facts in this case, it was error to grant the partial summary judgment in favor of the plaintiff.

OTHER MATTERS

Defendant raises other matters for our consideration. Defendant's opening brief contained some 27 "basic facts and legal issues * * * raised", 17 "issues raised", and 21 "questions presented". In addition defendant's supplemental opening brief contains two more "questions presented". We do not view with favor the "shotgun" technique in presenting matters to this Court. However, we have at least considered all 23 of the "questions presented" and as to those not disposed of in this opinion and insofar as they raise any question to be considered by this Court, they may be deemed by the appellant to be without merit.

The matter is reversed and remanded to the trial court with directions to vacate the summary judgment and to proceed consistent with this opinion.

DONOFRIO, P. J., and STEVENS, J., concur.