464 P.2d 652

**PITZEN'S WIG VILLA, an Arizona corporation, Appellant,**

v.

**Milton D. PRUITT and Terry Pruitt, Appellees.**

**No. 1 CA–CIV 958.**

Court of Appeals of Arizona,
Division 1.

Department B.

Feb. 4, 1970.

Richard R. Brennan, for William P. Lutfy (deceased), Phoenix, for appellant.

Lewis, Roca, Beauchamp & Linton, by Joseph E. McGarry, Peter D. Baird, Phoenix, for appellees.

JACOBSON, Judge.

The liability of a landlord for acts allegedly resulting in the failure of his tenant's business is asserted in this appeal from a judgment entered in the Superior Court of Maricopa County.

Plaintiff-appellant, PITZEN'S WIG VILLA, brought suit against its landlord, defendants-appellees MILTON D. PRUITT and TERRY PRUITT, his wife, alleging "that plaintiff was put out of business by the acts * * * of the defendants" and seeking $150,000 actual and $75,000 punitive damages. The complaint also alleged conversion. A partial summary judgment was entered in favor of the defendants as to the·claim of conversion.

Three months later a second Motion for Summary Judgment was granted in favor of the defendants on the remainder of the claim. Plaintiff appeals from the latter judgment only.

Although both Mr. Pruitt and his wife were named as defendants in this action, all the acts complained of were done by Mr. Pruitt and for convenience the defendants will hereinafter be referred to in the singular.

Plaintiff initially contends that it was not afforded sufficient opportunity to present controverting affidavits or a written response to defendant's second motion for summary judgment and therefore it was error for the trial court to grant the motion. We do not agree.

Defendant's motion for summary judgment was served and filed on June 28, 1968, and a hearing was set for July 22, 1968. A pretrial conference had previously been scheduled for July 8, 1968, exactly ten days after service of the motion for summary judgment. Oral arguments on the motion for summary judgment were heard at the pretrial conference without objection by either counsel.

Rule 56(c) of the Arizona Rules of Civil Procedure, 16 A.R.S. (Supp. 1969–70) requires a minimum interval of ten days between the date the motion is served and the date of the hearing and permits the adverse party to serve opposing affidavits anytime "prior to the day of (the) hearing." Here, the date·of the pretrial conference satisfied the ten-day mandate of Rule 56(c). We deem plaintiff's failure to object during oral argument·on the motion for summary judgment a waiver·of any error of the trial court in·considering arguments on this motion prior to the date originally scheduled. Moreover, inasmuch as plaintiff never requested that the court grant additional time within which to submit a written response or controverting affidavits, it cannot now urge error based upon inadequate opportunity to oppose defendant's motion. Cf. Milam v. Milam, 101 Ariz. 323, 419 P.2d 502 (1966).

■ Defendant, on the other hand, urges that plaintiff's failure to file controverting affidavits makes the granting of the motion mandatory on the trial court. With this contention we also do not agree. Commercial Engineering Corp. v. Madison Chevrolet, Inc., 10 Ariz.App. 529, 460 P.2d 200 (1969). The trial court is required to consider not only the supporting and controverting affidavits, but also the pleadings and any depositions, interrogatories and answers thereto and admissions on file which are brought to the court's attention by the parties. Arizona Rules of Civil Procedure, Rule 56(c), 16 A.R.S. (Supp. 1969–70). The record in this case contains several depositions and a controverting affidavit to an earlier motion for summary judgment. If this record discloses a genuine issue as to any material fact then summary judgment was inappropriately granted by the trial court. Transamerica Insurance Co. v. Valley National Bank, 11 Ariz.App. 121, 462 P.2d 814, (filed December 23, 1969).

■■ It is axiomatic that on an appeal from the granting of a motion for summary judgment the record will be viewed in a light most favorable to the party opposing the summary judgment and without a weighing of the conflicting evidence. Elerick v. Rocklin, 102 Ariz. 78, 425 P.2d 103 (1967). It is equally true that uncontroverted evidence favorable to the movant, and from which only one inference can be drawn, will be presumed to be true provided such evidence would be admissible at a trial on the merits. Executive Towers v. Leonard, 7 Ariz.App. 331, 439 P.2d 303 (1968); Patterson v. Patterson, 102 Ariz. 410, 432 P.2d 143 (1967); 3 Barron & Holtzoff, Federal Practice and Procedure, sec. 1237 (Rules ed., Wright rev. 1958). The above principles are observed in the following statement of facts.

The plaintiff is an Arizona corporation whose sole directors and managing officers are Mr. and Mrs. Sylvester Pitzen. On November 1, 1964, plaintiff, through its president, Mr. Pitzen, entered into a three-year renewable lease with the defendant for a building from which to conduct its business. The lease contained the following provision:

"Should there at any time be any default by Lessee *. * * Lessors may, at Lessors' sole option, declare this lease terminated * * *; provided, however, *Lessee shall not be held to be in default in * * * payment of rent * * * until ten days after receipt of written notice of such default. * * *"* (Emphasis added.)

Two and a half years later Mr. and Mrs. Pitzen, having consulted an attorney, decided to file personal and corporate bankruptcy. In late April, 1967, they discharged the corporation's last employee, locked the premises, and for all practical purposes suspended the business operations of Pitzen's Wig Villa. Sometime thereafter the defendant found Pitzen's Wig Villa closed during business hours and called plaintiff's attorney whose phone number had been placed just inside the front window by the Pitzens. Being informed by plaintiff's attorney of the impending bankruptcy, and with the concurrence of plaintiff's attorney, the defendant padlocked the front and rear doors of the building. The defendant maintains that the padlocks were added to more adequately secure the premises for the sole purpose of protecting the merchandise and other contents therein in the best interests of all parties concerned.

It is the act of padlocking the doors which plaintiff alleges put it out of business and caused $150,000 in damages. Plaintiff contends that the defendant informed Mr. Pitzen later on the same day that one of the reasons he had padlocked the doors was because plaintiff had breached the lease by being seven days in arrears with the rent. Padlocking the doors for such a reason, urges plaintiff, constituted a breach, by the defendant, of the lease provision requiring 10-days written notice before declaring a default and terminating the lease.

The validity of plaintiff's contention depends, of course, on whether the act of

padlocking the doors constituted constructive eviction.

■ Defendant argues that the padlocks were authorized by plaintiff's attorney and that plaintiff was bound by the acts of its agent. Plaintiff counters that the padlocking of the premises resulted in a termination of its business and that its attorney had no authority to agree to such an act. The undisputed evidence reveals that plaintiff's attorney agreed to the additional locks solely as a safety precaution for the benefit of his client, and not as a termination of plaintiff's lease or business by the defendant. Moreover, the placing of the sign containing the attorney's phone number in the window of plaintiff's business establishment clearly establishes that, as a matter of law, the plaintiff cloaked its attorney with at least ostensible authority to agree to the locks for safety purposes. O. S. Stapley Co. v. Logan, 6 Ariz.App. 269, 431 P.2d 910 (1967).

■ Notwithstanding defendant's agency argument, there still remains the possibility that other evidence in the record raises a question of whether the defendant in fact used the locks in such a way as to effect a constructive eviction. Such a question, however, could not be controlling here. Even if there is a genuine dispute over facts which might give rise to a claim for constructive eviction, such disputed facts cannot be considered "material" if the plaintiff suffered no damage from the conduct complained of. Weber v. Bates, 3 Ariz.App. 420, 415 P.2d 135 (1966).

■ The measure of damages for wrongful eviction consists of the actual or market value of the unexpired term as of the time of eviction, plus whatever other loss the lessee may have incurred as a *direct and natural consequence* of the wrongful eviction, less agreed rent. Purvis v. Silva, 94 Ariz. 62, 381 P.2d 596 (1963). There is no evidence concerning the actual or market value of the unexpired term nor is such urged as an element

of the damages. The actual damages prayed for relate solely to plaintiff's being "put out of business." We have searched the entire record carefully, and necessarily conclude that it is completely devoid of any evidence even tending to raise an inference of a causal relationship between the supposed constructive eviction and the damages claimed for the cessation of plaintiff's business. Rather all the evidence affirmatively points to a total lack of such a causal relationship.

Plaintiff's business operations were voluntarily suspended by its own officers and directors prior to the padlocking of the premises and plaintiff never attempted thereafter to conduct its business of rendering beauty services and selling wigs, although it was freely granted access to the premises whenever such was requested. Plaintiff had suffered net operating losses in 1965 and 1966 and did not know whether its business during the first quarter of 1967 produced a net profit. At the time the padlocks were attached, plaintiff was still contemplating bankruptcy. It was only after the padlocks had been in place for a week that Mr. Pitzen decided he had been misadvised by his attorney and began to seek out the help and suggestions of several people including his major creditors in an effort to avoid both personal and corporate bankruptcy. At this time the plaintiff had no cash and its principal assets, an inventory of wigs having a cost value in excess of $20,000, were so substandard as to be worth only a couple of thousand dollars for purposes of raising operating capital. The Pitzens had no money of their own which could be made available to the corporation and it is undisputed that plaintiff was unable to obtain an outside source of additional capital, without which it would be impossible to reopen or avoid corporate bankruptcy. Under such facts, the trial court would have to determine that there was no causal relationship between the alleged acts of the defendant and the resulting cessation of plaintiff's business.

Inasmuch as the defendant was entitled to summary judgment as a matter of law, the trial court's granting of his motion is affirmed.

EUBANK, P. J., and HAIRE, J., concur.