556 P.2d 803

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Charles G. Hall, III, general agent for John Hancock Mutual Life Insurance Company; and Phillip Lippmann, special agent for John Hancock Life Insurance Company, Appellants and Cross-Appellees,**

v.

**Sylvia D. McNEILL, a widow, Cynthia Lori Keith, a minor, Lorraine Marie Keith, a minor, Shannon Noreen Keith, a minor, Cheryl Ann Keith, a minor, and James Craig Keith, a minor, by and through their guardian ad litem, Sylvia D. McNeill, Appellees and Cross-Appellants.**

**No. 1 CA-CIV 2888.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 9, 1976.

Rehearing Denied Oct. 22, 1976.

Petition for Review Denied Nov. 30, 1976.

Evans, Kitchel & Jenckes by Philip C. Tower, Phoenix, for appellants and cross-appellees.

Jones, Teilborg, Sanders, Haga & Parks by Frank A. Parks, Phoenix, for appellees and cross-appellants.

JACOBSON, Presiding Judge.

In this appeal we are asked to determine whether a conditional receipt issued at the time of signing an application for life insurance created temporary insurance so as to have provided coverage upon death of the applicant which occurred prior to the company's determination of insurability.

This issue arose out of an action brought by appellee-plaintiff, Sylvia D. McNeill, widow of John R. McNeill as beneficiary of an alleged life insurance contract and guardian ad litem of various minors, against appellants-defendants, John Hancock Mutual Life Insurance Company (John Hancock), Charles G. Hall, III, general agent for John Hancock and Phillip Lippmann, special agent for John Hancock. Plaintiff's complaint was in two counts. Count one alleged a contract of life insurance existed with John Hancock insuring the life of John R. McNeill and asked for enforcement of that contract and punitive damages. Count two alleged negligence on the part of the general and special agent of John Hancock and sought damages against these individuals only in an amount equal to the terms of the insurance contract and punitive damages. The trial court on plaintiff's motion for summary judgment, granted plaintiff's relief as to count one, but ruled that plaintiff had made an election of remedies by obtaining judgment on count one and therefore was not entitled to a determination of punitive damages. John Hancock has appealed the judgment against it and its agents under count one. Plaintiffs have cross-appealed from the trial court's denial of their punitive damage relief.

The facts giving rise to plaintiff's action are not in substantial dispute. On October 17, 1972, as a result of a contact by Phillip Lippmann, salesman for John Hancock, John R. McNeill signed an application for life insurance on his life in the sum of

$15,000, with a double indemnity clause and various paid up life insurance policies on the lives of his wife and the five minor children. After Mr. McNeill answered all the questions propounded, Mr. Lippmann determined the amount of premium involved and received a check from Mr. McNeill in the sum of $39.00 covering the first month's premium for the insurance purchased. Mr. Lippmann then issued Mr. McNeill a conditional receipt for this sum [1] which provided, in pertinent part, that if the sum received was

"at least 1 month's proportionate part of the premium according to the Company's published rates for the policy and premium interval selected in the application, and if the Company at its Home Office shall determine that each person proposed for insurance (including proposed Insured) was on such person's 'Completion Date' acceptable under the Company's rules for the premium class, amount, and plan of insurance, and additional benefits, if any, applied for, the contract applied for shall take effect retroactively as of the latest 'Completion Date', or of such other date as may be requested in the application and accepted by the Company, notwithstanding any change in any person's acceptability due to any disease contracted or injury sustained after such person's 'Completion Date'. Each person's 'Completion Date' shall be the date of completion of the latest of all Parts A and B and medical examinations and tests required for such person by the Company's published underwriting requirements according to the age and the amount applied for."

During the course of the initial interview with Mr. Lippmann, Mr. McNeill was advised it would be necessary for him to take a physical examination and such an examination was scheduled the same day.

Mr. McNeill passed the physical examination. There is no contention that Mr. McNeill's physical condition made him uninsurable. Both Mr. Lippmann and Mr. Hall, Mr. Lippmann's supervisor, recommended to John Hancock that Mr. McNeill's application for life insurance be accepted.

The application and medical report were received in John Hancock's home office on October 24, 1972, and a retail credit report on Mr. McNeill was received by the home office on October 27, 1972. This credit report revealed that Mr. McNeill had recently been convicted of driving while intoxicated,[2] and that he had at some unknown time in the past been laid off a job because of drinking.

On November 16, 1972, Mr. McNeill was killed in an automobile accident and John Hancock was notified of his death on November 17, 1972. On December 11, 1972, plaintiffs were notified that the application for insurance had been rejected. In answer to interrogatories, John Hancock indicated that the reason the application had been denied was Mr. McNeill's recent conviction of driving while intoxicated and the information concerning his use of intoxicants.

Mr. William J. Mahoney, underwriting consultant for John Hancock, testified through deposition, that the "guidelines" for underwriting at John Hancock did not make it mandatory that a recent conviction for drunk driving would result in a rejection of life insurance. He further testified that such a conviction and other drinking habits could result in a "rated" premium (a higher premium then standard for the loss covered) or rejection and that this decision was normally a judgment determination by the particular underwriter reviewing the application and data.

1. Although there is some dispute as to whether the conditional receipt was actually delivered to Mr. McNeill, plaintiffs concede, because of the summary judgment aspects of this litigation, that such a receipt could be considered as being delivered.

2. This information had been volunteered by Mr. McNeill to Lippmann at their first interview and noted by Lippmann on the application.

The plaintiff's basic contention on appeal is that the conditional receipt issued by John Hancock created a temporary contract of insurance effective at least at the time the physical examination was completed and since death occurred prior to any formal rejection of that temporary insurance, John Hancock is liable for the face value of the anticipated policy. The trial court agreed with this contention.

John Hancock, on the other hand, contends that during the interim between the issuance of the conditional receipt and the issuance of the actual policy, Mr. McNeill would have had coverage if three conditions were met—the payment of one month's premium, the passing of a physical examination and a showing that Mr. McNeill was acceptable under the company's rules and regulations. John Hancock thus argues that the beneficiaries can recover only if Mr. McNeill was found to be insurable in accordance with its rules and regulations or if its determination of uninsurability was made in bad faith. These determinations, John Hancock argues, are material fact issues precluding the granting of summary judgment.

This court, then, is directly faced with the issue of whether the conditional receipt utilized in this case provided temporary insurance and if so, when did that temporary insurance become effective?

Before discussing the law pertinent to this subject, it is important to analyze the type of conditional receipt involved in this case. It is generally conceded that conditional receipts utilized by insurance companies fall into three[3] general categories. As stated in *Simpson v. Prudential Insurance Co. of America*, 227 Md. 393, 177 A. 2d 417 (1962) these classifications are:

"(1) 'insurable risk' or 'satisfaction' binders in which the document states that the proposed insurance takes effect at the time of payment or of the physical examination, if it later appears that under objective standards of insurability that the applicant was insurable at the date in question; (2) 'approval' binders in which no insurance comes into effect until the insurance is approved by an authorized official of the company; if it does, however, the effective date is that of the application or the medical examination; and (3) unconditional temporary insurance during the pendency of the application or for a stated period (rarely used in life insurance.)" 177 A.2d at 422.

Stripped of its non-essentials, the conditional receipt utilized by John Hancock here, provides that in the event the payment received, as evidenced by the receipt, "is at least 1 month's proportionate part of premium according to the Company's published rates . . . and if the Company at its Home Office shall determine that each person proposed for insurance . . . was . . . acceptable under the Company's rule . . . the contract applied for shall take effect retroactively as of the latest 'Completion Date' . . . ."

John Hancock contends, and we agree, that this type of conditional receipt falls within the "insurable risk" classification.

■ There is no doubt that insurable risk type of conditional receipts can give rise to a contract of insurance, even in the absence of the issuance of an insurance policy provided the conditions precedent to such coverage are met. As was stated in *Mofrad v. New York Life Ins. Co.*, 206 F. 2d 491 (10th Cir., 1953):

"The provisions in the application agreement do not fix the effective date of the insurance contract. They simply impose conditions precedent to the taking effect of the insurance coverage (citation omitted). When read together they mean that the insurance coverage shall take

---

3. The annotator of Annot., Temporary Life, Accident, or Health Insurance Pending Approval of Application or Issuance of Policy, 2 A.L.R.2d 943, (1948), makes four classifications. 2 A.L.R.2d at 960–963.

effect only in the event the conditions precedent specified in the application are fulfilled, and then only as of the date of the application. (citation omitted)" 206 F.2d at 494.

As previously indicated by John Hancock's contention in this litigation, it does not disagree with this basic principle of law. The basic point of disagreement raised is what are the conditions precedent to insurance coverage under the conditional receipt?

Plaintiffs in this case urge that we adopt a rule espoused by some courts, especially California,[4] that the payment of the premium and the issuance of a conditional receipt instantly gives rise to a contract of temporary insurance subject only to a right in the company to terminate the contract if it becomes dissatisfied with the risk prior to a loss occurring under the temporary insurance. The holding of the California cases on this subject are based upon the court's ascertainment and effectuation of "the reasonable expectations of the ordinary applicant." *Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904, 109 Cal.Rptr. 473, 513 P.2d 353 (1973); *Slobojan v. Western Travelers Life Ins. Co.*, 70 Cal.2d 432, 74 Cal.Rptr. 895, 450 P.2d 271 (1969). Aside from the unsupported premise that the "reasonable expectation of the ordinary applicant" is that upon payment of a premium the applicant immediately thinks he is insured (even in the face of being told that he must have a medical examination to determine insurability) the literal application of that doctrine in our opinion has led to questionable results. *See*, for example, *Smith v. Westland Life Ins. Co.*, 15 Cal.3d 111, 123 Cal.Rptr. 649, 539 P.2d 433 (1975).

Moreover, Arizona has expressly held that under an insurable risk conditional receipt, temporary insurance coverage is not afforded until the applicant complies with the conditions precedent to coverage under the plain and unambiguous terms of the conditional receipt. *Roscoe v. Bankers Life Ins. Co.*, 22 Ariz.App. 282, 526 P.2d 1080 (1974).

We therefore turn to a determination of what are the conditions precedent to effectuating temporary coverage under the terms of the insurable risk conditional receipt used by John Hancock in this case. It is clear from the receipt itself that payment of a sum in an amount equal to one month's premium as established by the company's published rates is one condition precedent. There is no contention that this condition was not complied with.

A determination as to any other conditions precedent is somewhat more difficult. The receipt states these conditions to be a determination by the home office of whether the applicant "was . . . *acceptable under the Company's rules* for the premium, class, amount and plan of insurance and additional benefits, if any, applied for . . . ." (emphasis added).

A reading of the receipt as a whole, shows that insurability from a medical standpoint is one of the company's "rules" that will determine acceptability, as the "completion date" specifically refers to medical examinations and tests "required . . . by the Company's published underwriting requirements," and makes it clear that retroactivity shall not be affected by a change in that physical condition. Also Mr. McNeill was specifically informed of the necessity of a medical examination. If we consider a medical examination as being a condition precedent (and we do) to a determination of whether Mr. McNeill "was acceptable under the company's rules" for insurance, there is no contention that he failed to meet this condition.

John Hancock urges, however, that one of the rules that affects the insurability of

4. *See, Ransom v. Penn Mutual Ins. Co.*, 43 Cal.2d 420, 274 P.2d 633 (1954).; *Turner v. Investors Syndicate Life Ins. & Annuity Co.*, 33 Cal.App.3d 424, 108 Cal.Rptr. 47 (1973);

*Young v. Metropolitan Life Ins. Co.*, 272 Cal. App.2d 453, 77 Cal.Rptr. 382, 78 Cal.Rptr. 568 (1969).

Mr. McNeill was his personal habits, particularly his fondness for intoxicants and the fact that he had recently been convicted of driving while intoxicated. However, there is nothing on the face of the receipt which specifically states that effectiveness of the contract is based upon the personal habits of the applicant (as can be ascertained in the case of physical condition). Nor do the words "acceptable under the company's rules" used in the conditional receipt disclose that the personal habits are a condition precedent to effectiveness of the coverage. Even if we assume Mr. McNeill was the most sophisticated insurance buyer in the world, and we further assume that the words "acceptable under the Company's rules" incorporates by reference all the rules of the company, he would still be unable to determine whether his personal habits were a condition precedent to coverage under this conditional receipt. If he looked at the company's rules he would find that his personal habits may (but may not) affect the premium he is charged for coverage. Moreover, he would find from the company's rules that he would have to look into the subjective mind of the company's underwriters to determine whether those habits were sufficient for the company to reject coverage totally. In short, the company's rules did not disclose to Mr. McNeill whether he was insurable at all or whether his premium will be that stated to him or an increased premium, or whether coverage different from that applied for would be offered by the company, these determinations being locked in the subjective judgment of an underwriter.

A concept of "objectivity" has been adopted by the Maryland courts in construing insurable risk conditional receipts in life insurance cases. *See, Simpson v. Prudential Insurance Co. of America, supra.* We interpret this objectivity doctrine to apply to what the contracting parties (including the applicant) can objectively determine from the face of the contracting

document to be conditions precedent to effective coverage under that document.

Certainly the undisclosed, unascertainable subjective workings of an underwriter's mind, cannot be objectively ascertained by the applicant for the purpose of having such a determination be a condition precedent to the effective date of the coverage afforded under the conditional receipt.

We therefore hold that under the express terms of the conditional receipt used by John Hancock, Mr. McNeill had temporary insurance coverage in accordance with the application for insurance as of the date of his death, he having prior to that date complied with all the conditions precedent to that coverage stated in the receipt—payment of premium required and passing of a physical examination and no factual issue exists as to the compliance with these requirements. We do not intimate that John Hancock, based upon data presented and the subjective judgments formed by its underwriters could not have rejected coverage or presented a policy to Mr. McNeill, in the form of a counter offer to insure, that differed in terms or price than that applied for. Such a counter offer would, of course, have been subject to acceptance or rejection by Mr. McNeill.

We merely hold that John Hancock, having accepted Mr. McNeill's money, also accepted the risk that Mr. McNeill might die subsequently to the time he complied with the conditions precedent to coverage offered but prior to the time John Hancock could make a counter offer or a rejection.

■ Turning to the cross-appeal, plaintiffs contend that they are entitled to a trial on the issue of punitive damages. We are not clear upon what count of the complaint such a request is made. As previously stated, count one dealt with the theory that a contract of insurance existed between Mr. McNeill and John

**508**

Hancock which John Hancock breached by failing to pay in accordance with that contract. Although punitive damages are requested under this count, punitive damages are not allowed in a breach of contract suit. *Continental National Bank v. Evans*, 107 Ariz. 378, 489 P.2d 15 (1971). Nor have plaintiffs alleged in this count the tort of bad faith failure to pay reasonable claims, see, *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), which might possibly give rise to the claim of punitive damages as against John Hancock.

Count two of the complaint seeks damages only against the individual insurance salesman and his supervisor and seeks no damages against John Hancock. The gist of this count is that through the negligence of these individuals a contract of insurance did not come into existence with John Hancock and therefore they are liable for damages equal to the contracted insurance policy. As the trial court held, and we affirm, a contract of insurance did exist with John Hancock and therefore no liability to the individual defendant can arise under count two of the complaint and upon finding a contract to exist, this count should have been dismissed. Under these circumstances, the trial court properly, although for the wrong reason, held that the plaintiff's money judgment was restricted to the value of the policy involved.

We must dispose of one final matter. The trial court's judgment under count one ran against the individual defendants, Hall and Lippmann. We can find no basis for this liability under the complaint filed. For this reason, the judgment against these individuals must be reversed.

The trial court's judgment against John Hancock is affirmed; the judgment against Hall and Lippmann is reversed. The trial court's judgment is further modified by directing that count two of plaintiffs' complaint be dismissed.

SCHROEDER and WREN, JJ., concur.