630 P.2d 1055

**Lydia CORRAL, Mario Corral, Alfredo Corral and Lupe Corral, Plaintiffs/Appellants,**

v.

**FIDELITY BANKERS LIFE INSURANCE COMPANY, Defendant/Appellee.**

**No. 2 CA–CIV 3883.**

Court of Appeals of Arizona, Division 2.

July 1, 1981.

Stanfield, McCarville, Coxon & Fitzgibbons by David A. Fitzgibbons and Robert M. Yates, Casa Grande, Richard LaPaglia, Jr., Eloy, for plaintiffs/appellants.

Wildermuth & Wildermuth by John R. Wildermuth, Coolidge, for defendant/appellee.

## OPINION

HATHAWAY, Chief Judge.

Whether life insurance coverage existed at the time of the death of decedent, Alfredo Corral, no formal policy having issued, is

the underlying question of this lawsuit. Summary judgment was entered in favor of defendant and against plaintiffs, decedent's widow and surviving children.

We must determine whether summary judgment was improperly granted because (1) a material fact issue remains as to the existence of the principal-agent relationship between the insurance company and the local insurance sales office, and (2) the conditional receipt given to the decedent upon application for insurance created a contract of insurance.

On July 11, 1977, decedent submitted to the James C. Stamm agency, a licensed independent general agency operating out of Florida, through its local agent, Jeffrey Tanham, his written application for life insurance in the sum of $60,000 with double indemnity for accidental death. On that date, he paid his first premium in the sum of $300, and received a conditional receipt. He paid a second premium of $243 to the Stamm agency on August 24, 1977, and a third premium of $242 on September 9, 1977. He was accidentally shot and killed on September 12, 1977.

In essence, plaintiffs contend that a life insurance contract existed between decedent and Fidelity; Fidelity contends that it had not accepted decedent as an insurable risk on the date of his death. The first page of the application contained the following:

"1. That Parts I and II of the Application, including any supplements or amendments to the Application, shall become part of the policy applied for. The undersigned will be bound by all representations, statements, answers and agreements pertaining to the Proposed Insured.

2. (a) That if the deposit taken with the Application is at least equal to the full first premium for the amount and plan of insurance applied for on the mode of premium payment selected, the liability of the Company shall be as stated in the Conditional Receipt bearing the same number and date as this Application.

(b) That if no deposit is taken at the time of completing this Application, the Company shall have no liability unless and until a policy is issued and the first premium is paid during the lifetime of the Proposed Insured and while the Proposed Insured's health, habits and occupation remain the same as represented in this Application."

The "conditional receipt" given decedent at the time of his application and payment for the first premium provided:

"This receipt must not be detached and delivered to the Applicant unless payment has been made and standard issuance is expected.

CONDITIONAL RECEIPT

Received $300.00 as the first premium on the life of Alfredo Corral hereinafter called the Proposed Insured, for which an Application bearing the number above is made this day to the Fidelity Bankers Life Insurance Company. This payment is made and accepted subject to the following conditions:

Insurance for the smaller of the amount applied for and the amount specified in the last paragraph of this Conditional Receipt will commence on the Effective Date, as defined below, under the terms and conditions of the policy applied for and usually issued by the Company, provided that on the Effective Date the Proposed Insured is acceptable to the Company as a standard risk under its published rules, limits and standards for the plan and for the amount applied for; otherwise, there shall be no liability on the part of the Company except to return the amount received under this Conditional Receipt. In the event that accidental death benefits or premium waiver disability benefits must be declined or rated or in some way restricted, the life insurance alone may, nevertheless, be effected subject to the terms and conditions of this Conditional Receipt. If less than the full first premium has been paid, any insurance that may be effective shall be in force only for the amount which the par-

tial premium so paid can purchase when applied as an annual premium but in no event to exceed the amount applied for and the maximum limits stated in the last paragraph of this Conditional Receipt. 'Effective date' as used herein means the latest of: (a) the date of Part I of the Application; (b) the date of completion of all medical examinations, tests, · x-rays, and electrocardiograms required by published Company rules but not later than sixty (60) days after the date of Part I of the Application; (c) Policy Date, if any, requested in the Application.

The Maximum Amount of Insurance which may become effective prior to policy delivery, including any amount of insurance currently in force or applied for in this Company, is (a) $100,000 of life insurance, and (b) $50,000 of accidental death benefits in conjunction with life insurance. All benefits under group and accident policies shall be disregarded in computing these limits."

■ It is axiomatic that summary judgment should not be granted where disputed facts exist which, if true, could affect the final judgment. *Livingston v. Citizen's Utility, Inc.,* 107 Ariz. 62, 481 P.2d 855 (1971). The movant for summary judgment must prove lack of a genuine issue as to any material facts and failure to establish entitlement to judgment as a matter of law does not require the opposing party to file opposing affidavits. *Lujan v. MacMurtrie,* 94 Ariz. 273, 383 P.2d 187 (1963). Thus, to affirm the granting of summary judgment the papers of the moving party must show entitlement thereto as a matter of law, *ibid,* and we will view the pleadings, affidavits and admissions in the light most favorable to the losing party. *Wells-Stewart Construction Co. v. General Insurance Co.,* 10 Ariz.App. 590, 461 P.2d 98 (1969).

■ Addressing first the issue of the agency relationship, we note that the complaint generally alleges the agency. Such has been held to be sufficient without the necessity of an averment of the authority of the agent to act in a particular instance. *Kjerschow v. Daggs,* 24 Ariz. 207, 207 P.

1089 (1922). The question of whether an agency existed is one of fact. *See Phoenix Western Holding Corp. v. Gleeson,* 18 Ariz. App. 60, 500 P.2d 320 (1972). An implied agency may be established through words or conduct of the principal and the relation of the parties to each other. *Ibid.* The Stamm agency and its local agent used forms from Fidelity and marked with Fidelity's logo. These forms included the application form, the conditional receipt, the promissory note and the medical examination forms. Furthermore, prior to the decedent's death, Fidelity issued checks from its home office to pay for the decedent's chest x-ray and medical examination reports, which Fidelity required as a condition precedent to implementing its policy. In connection with the question of the agency relationship, Fidelity's senior vice president stated in his affidavit:

"3. That Fidelity has, at various times in the past, accepted applications for insurance from the JAMES C. STAMM AGENCY, general and independent agency, but that at no time has his Company authorized said JAMES C. STAMM · AGENCY to act as their agent with the authority to contract on Fidelity's behalf.

4. That at no time prior to the submission of the decedent, ALFREDO CORRAL'S, application for insurance, did Fidelity know of the existence of JEFFREY TANHAM, and further, that at no time had they authorized him to act in their behalf as an insurance agent."

Agency may be proved by direct evidence of express contract of agency between the principal and agent or by proof of facts implying such contract or the ratification thereof. *Phoenix Western Holding Corp. v. Gleeson,* supra. Acceptance of the benefit of an unauthorized act of one purporting to act as an agent amounts to ratification. *Ibid.* The underwriting file, which is part of the record in the trial court, contains ample documentation of the relationship between Fidelity and the Stamm agency to raise a factual issue on the agency question, and summary judgment on the basis of the

movant's affidavit cannot stand on the agency question.

As to whether a contract for insurance came into existence, it is undisputed that on July 11, 1977, the decedent submitted an application for insurance, paid his first premium and was given a "conditional receipt." If that conditional receipt became a binding contract of insurance on or before the decedent's death, the summary judgment cannot stand.

Conditional receipts issued on applications for insurance fall into three categories. Those categories were described in *John Hancock Mutual Life Insurance Co. v. McNeill*, 27 Ariz.App. 502, 556 P.2d 803 (1976), quoting from the classifications stated in the Maryland case of *Simpson v. Prudential Insurance Company of America*, 227 Md. 393, 177 A.2d 417 (1962):

"(1) '[I]nsurable risk' or 'satisfaction' binders in which the document states that the proposed insurance takes effect at the time of payment or of the physical examination, if it later appears that under objective standards of insurability that the applicant was insurable at the date in question; (2) 'approval' binders in which no insurance comes into effect until the insurance is approved by an authorized official of the company; if it does, however, the effective date is that of the application or the medical examination; and (3) unconditional temporary insurance during the pendency of the application or for a stated period (rarely used in life insurance.)" *Id.* at 505.

The language of the conditional receipt in the instant case fits into the first classification, i. e., the "insurable risk" category, as did the conditional receipt construed in *McNeill*. The conditional receipt before us says essentially that insurance would start on the "effective date" if the applicant had paid the premium and was a standard risk under Fidelity's published rules. The "effective date," as defined in the conditional sales receipt, could not be more than 60 days after the date of the application.

Coverage is not afforded, however, until the applicant complies with the conditions precedent to coverage under the plain and unambiguous terms of the conditional receipt. *Roscoe v. Bankers Life Insurance Co. of Nebraska*, 22 Ariz.App. 282, 526 P.2d 1080 (1974). As the court stated in *McNeill*:

"There is no doubt that insurable risk type of conditional receipts can give rise to a contract of insurance, even in the absence of the issuance of an insurance policy provided the conditions precedent to such coverage are met." 27 Ariz.App. at 505, 556 P.2d 803.

Corral complied with all the conditions precedent appearing on the face of the conditional receipt. He paid the full premiums and took all the medical examinations required by Fidelity. If he was a standard risk under Fidelity's rules, then he was insured as of the "effective date" absent a counter-offer or rejection by Fidelity. *See John Hancock Mutual Life Insurance Co. v. McNeill*, supra.

In *McNeill*, the conditional receipt contained the same three conditions precedent as the receipt here contains: payment of the premium, taking a medical examination and being "acceptable under the Company's rules." 27 Ariz.App. at 504, 556 P.2d 803. The court in *McNeill* held that the applicant did not have to second-guess the underwriter, which had discretion under its rules to accept or reject the applicant on the basis of the applicant's history of alcoholism. "Certainly the undisclosed, unascertainable subjective workings of an underwriter's mind, cannot be objectively ascertained by the applicant for the purpose of having such a determination be a condition precedent to the effective date of the coverage ...." *Id.* at 507, 556 P.2d 803. Here as in *McNeill*, the applicant complied with the conditions precedent appearing objectively on the face of the conditional receipt. Whether the company's rules would have provided objective criteria of insurability cannot now be determined by the court, since those rules were not made available.

Fidelity argues that the decedent was not an insurable risk as defined by its rules and regulations. Those rules and regulations have not been made a part of the record. Defining who is a standard risk by the interpretation of those rules, which Fidelity apparently argues is a part of its insurance contracts, is a question of law for the court. *Hadley v. Southwest Properties, Inc.*, 116 Ariz. 503, 570 P.2d 190 (1977). In his affidavit, Fidelity's senior vice president stated that "his Company had not accepted ALFREDO CORRAL as an insured and, further, would not accept him as an insured, because he could not qualify, due to his high blood pressure and diabetes, as a standard risk under Fidelity's published rules, limits and standards, for the plan and for the amount applied for." This statement invades the province of the trial court and is presented as a conclusion of law by the corporate officer. The trial court was not afforded an opportunity to interpret the rules, which are incorporated into the contract, since they were not made available to the court. The affidavit is deficient in its failure to incorporate those rules as required by rule 56(e), Arizona Rules of Civil Procedure, which requires:

"Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

Lacking the availability for review by the court of the rules construed by the corporate officer in his affidavit, the affidavit cannot be used to support the motion for summary judgment. *See Harmon v. Szrama*, 102 Ariz. 343, 429 P.2d 662 (1967).

Fidelity argues that plaintiffs cannot now attack the summary judgment because rule 56 required them to file an affidavit controverting that of Fidelity's senior vice president. It relies on *Gillard v. Estrella Dells I Improvement District*, 25 Ariz.App. 141, 541 P.2d 932 (1975), for the proposition that a non-movant's failure to file controverting affidavits waives the defect in the movant's affidavit. In an earlier case from the same department of division one of this court, however, Fidelity's reading of rule 56 was specifically rejected. In *Pitzen's Wig Villa v. Pruitt*, 11 Ariz.App. 332, 464 P.2d 652 (1970), the court stated:

"Defendant . . . urges that plaintiff's failure to file controverting affidavits makes the granting of the motion mandatory on the trial court. With this contention we also do not agree. (citation omitted) The trial court is required to consider not only the supporting and controverting affidavits, but also the pleadings and any depositions, interrogatories and answers thereto and admissions on file which are brought to the court's attention by the parties." *Id.* at 334, 464 P.2d 652.

The record here shows that plaintiffs, in their response to Fidelity's motion for summary judgment, "brought to the [trial] court's attention" a dispute as to the severity of Mr. Corral's diabetes, overweight and blood pressure, appearing in Fidelity's own underwriting file. *See also Sato v. Van Denburgh*, 123 Ariz. 225, 599 P.2d 181 (1979), in which the Arizona Supreme Court stated:

"When defendant files a properly supported motion for summary judgment, the plaintiff is obligated to present, *either by affidavit or some other evidence*, facts controverting the defendant's affidavit." Id. at 228, 599 P.2d 181. (Emphasis added)

Similarly, reliance on *Century Medical Plaza v. Goldstein*, 122 Ariz. 583, 596 P.2d 721 (1979), is misplaced. In that case, the movant filed its motion and affidavits less than ten days before the hearing on the motion, a violation of rule 56(c). The court held that the non-movant could not for the first time on appeal assert this violation to invalidate the summary judgment. The total failure to "object" or ask for a continuance in the trial court acted as a waiver of the defect, not the failure to file a controverting affidavit. Here, plaintiffs "objected" to the affidavit in their reply to the motion for summary judgment,

contending that the affidavit was not admissible evidence.

 Moreover, if the affidavit of its corporate officer does not itself show that Fidelity is entitled to summary judgment, the court could not grant summary judgment even if plaintiffs had not objected. *See Gillard*, supra; *Hale v. Brown*, 84 Ariz. 61, 323 P.2d 955 (1958). As pointed out above, the Fidelity vice-president's affidavit does not state facts from personal knowledge, but rather states conclusions of law, and thus fails to show that there is no material issue of fact.

Reversed and remanded for further proceedings consistent with this opinion.

HOWARD and BIRDSALL, JJ., concur.