NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

NATIONAL TAX LIEN REDEMPTION SERVICES L.L.C., et al.,
*Plaintiffs/Appellees*,

*v.*

DIANE BOSCHIAN SWEENEY,
*Defendant/Appellant*.

No. 1 CA-CV 17-0611
FILED 1-8-2019

---

Appeal from the Superior Court in Maricopa County
No. CV2012-092032
The Honorable David M. Talamante, Judge

**AFFIRMED**

---

COUNSEL

The Hendrix Law Office, Gilbert
By Heather M. Hendrix
*Co-Counsel for Plaintiff/Appellee National Tax Lien Redemption Services, L.L.C.*

Strojnik, P.C., Phoenix
By Peter Strojnik
*Co-Counsel for Plaintiff/Appellee National Tax Lien Redemption Services, L.L.C.*

Lake & Cobb, P.L.C., Tempe
By Richard L. Cobb, Hank E. Pearson, Timothy H. Barnes
*Counsel for Plaintiff/Appellee Premier Equity Solutions, L.L.C.*

Gust Rosenfield, P.L.C., Phoenix
By Scott A. Malm, Mina O'Boyle
*Co-Counsel for Plaintiffs/Appellees Geared Equity L.L.C. and 50780, L.L.C.*

Kevin T. Ahern, P.C., Phoenix
By Kevin T. Ahern
*Co-Counsel for Plaintiffs/Appellees Geared Equity L.L.C. and 50780, L.L.C.*

Law Office of Jim Crook, Phoenix
By Jim Crook
*Counsel for Defendant/Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Vice Chief Judge Peter B. Swann and Judge David D. Weinzweig joined.

---

**J O N E S**, Judge:

**¶1**　　　Diane Sweeney appeals the denial of her motion to set aside a 2012 tax lien foreclosure judgment. Sweeney argues the judgment is void because she was not properly served. For the following reasons, we affirm.[1]

### STATUTORY BACKGROUND

**¶2**　　　This case arises from a tax lien foreclosure judgment. "[A] tax that is levied on real or personal property is a lien on the assessed property." Ariz. Rev. Stat. (A.R.S.) § 42-17153(A).[2] To secure payment of unpaid taxes, the Arizona Legislature has authorized county treasurers to

---

[1]　　　A related case was contemporaneously filed with this one. *See Nat'l Tax Lien Redemption Servs. L.L.C. v. Rivers*, 1 CA-CV 17-0611 (Ariz. App. Jan. 8, 2019) (mem. decision).

[2]　　　Absent material changes from the relevant date, we cite the current version of rules and statutes.

sell the tax liens to third-party purchasers who receive a certificate of purchase. A.R.S. §§ 42-18101(A), -18118(A). If the lien is not redeemed within three years of the sale, "the [lien's] purchaser . . . may bring an action to foreclose the right to redeem." A.R.S. § 42-18201(A). However, "[a]t least thirty days before filing an action to foreclose the right to redeem . . . the purchaser shall send notice of intent to file the foreclosure action by certified mail to . . . [t]he property owner of record." A.R.S. § 42-18202(A)(1).

¶3        A tax lien may be redeemed by or on behalf of the property owner or "[a]ny person who has a legal or equitable claim in the property," A.R.S. § 42-18151(A), "at any time before judgment is entered, notwithstanding that an action to foreclose has been commenced," A.R.S. § 42-18206. If the trial court finds, however, "that the sale [of the tax lien] is valid and that the tax lien has not been redeemed," the court must enter judgment foreclosing the right of the property owner to redeem the liens and direct the county treasurer to "expeditiously execute and deliver to the [purchaser] . . . a deed conveying the property described in the certificate of purchase." A.R.S. § 42-18204(A). The entry of judgment extinguishes all "legal or equitable right, title or interest in the property" of the parties whose rights to redeem are foreclosed. A.R.S. § 42-18204(B).[3]

## FACTS AND PROCEDURAL HISTORY

¶4        In 1983, Diane and her husband, Tom, purchased a home on real property in Phoenix (the Property) for Tom's mother to live in.[4] In 2007, Tom quitclaimed his interest in the Property to Diane, making her the sole owner, but Diane delegated to Tom the responsibility to continue paying the property taxes and insurance for the Property. When Tom failed to pay

---

[3]        For this reason, "if the holder of a tax lien certificate wants to foreclose the redemption right of an owner or a person who has a legal or equitable interest in the property, the holder must join those parties in the foreclosure action." *Roberts v. Robert*, 215 Ariz. 176, 180, ¶ 16 (App. 2007). If the certificate holder fails to join an interested party, "but obtains a judgment foreclosing the right to redeem held by other defendants, that judgment will not foreclose the redemption right of the missing party." *Id.*

[4]        In reviewing a denial of a motion to set aside, "[w]e view the facts in the light most favorable to upholding the trial court's ruling." *Blair v. Burgener*, 226 Ariz. 213, 215, ¶ 2 (App. 2010) (quoting *Ezell v. Quon*, 224 Ariz. 532, 534, ¶ 2 (App. 2010), and citing *Goglia v. Bodnar*, 156 Ariz. 12, 20 (App. 1987)).

the taxes on the Property from 2006 to 2011, the Maricopa County Treasurer sold the resulting tax liens to National Tax Lien Redemption Services, L.L.C. (National Tax) for approximately $28,000. In February 2012, National Tax mailed a notice of intent to foreclose to both the Property and Diane's residence. *See* A.R.S. § 42-18202(A)(1).

¶5        Tom received the notice but apparently did not inform Diane of either the tax liens or the potential lawsuit. Instead, in early March 2012, Tom negotiated an agreement whereby National Tax would wait sixty days to act upon its foreclosure action in exchange for double the amount owed. National Tax sent Tom a written agreement containing these terms and instructed him to "[p]lease have your wife sig[n] it and email it back." Tom signed Diane's name on the document and returned it to National Tax without telling her. The next week, National Tax filed its tax lien foreclosure complaint. Personal service upon Diane at her residence was attempted but unsuccessful.

¶6        Tom did not make the agreed-upon payment in May 2012 but instead negotiated a second agreement whereby National Tax would wait another thirty days to act upon its foreclosure action in exchange for receipt of a reduced sum, Diane's acceptance of service of process, and a stipulation for the entry of judgment in the event of nonpayment. National Tax again sent Tom a written agreement memorializing those terms and instructed Tom to "have [his] wife sign." Tom again signed Diane's name without telling her and returned the document to National Tax. Tom again failed to pay. National Tax filed a notice of nonpayment and obtained judgment against Diane pursuant to the signed stipulation in October 2012.

¶7        In May 2013, Premier Equity Solutions, L.L.C. (Premier) purchased the Property for $565,000 from National Tax, in large part with funds borrowed from Geared Equity, L.L.C. and 50780, L.L.C. (collectively, the Lenders). Premier promptly evicted Tom's ninety-nine-year-old mother from the Property, demolished the existing residence, and borrowed another half-million dollars from the Lenders to build a new residence upon the Property.

¶8        Three years later, in October 2016, Diane moved to set aside the 2012 judgment, arguing it was void because she had not been properly served. The trial court denied the motion after an evidentiary hearing, and Diane timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(2). *See M&M Auto Storage Pool, Inc. v. Chem. Waste Mgmt., Inc.*, 164 Ariz. 139, 141 (App. 1990) ("An order denying or

granting a motion to set aside a judgment . . . is appealable as a 'special order made after final judgment.'") (citations omitted).

## DISCUSSION

### I.    Standing to Oppose Motion to Set Aside

**¶9**         As a threshold issue, Diane argues the trial court erred when it allowed Premier and the Lenders to oppose her motion to set aside. Although she repeatedly asserts that Premier and the Lenders lacked standing, she fails to cite any relevant legal authority to support her argument.  This Court will not consider bald assertions "offered without elaboration or citation to any . . . legal authority." *In re U.S. Currency in the Amount of $26,980.00*, 199 Ariz. 291, 299, ¶ 28 (App. 2000) (citing ARCAP 13, and *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 93, ¶ 50 (App. 1998)); *see also Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491, ¶ 6 n.2 (App. 2007) (concluding that the mere mention of an argument in passing without reference to relevant supporting authority waived the issue on appeal).  Nonetheless, we conclude that Premier and the Lenders had standing to intervene as entities with substantial financial investments in the Property that would have been directly injured if Diane's motion had been granted.

### II.    Motion to Set Aside

**¶10**         Diane argues the 2012 judgment is void and should have been set aside because she was never properly served.  Specifically, Diane disputes the trial court's finding that Tom was authorized to accept service on her behalf.  Indeed, a judgment entered without jurisdiction because of a lack of proper service is void, *Koven v. Saberdyne Sys., Inc.*, 128 Ariz. 318, 321 (App. 1980) (citing *Marquez v. Rapid Harvest Co.*, 99 Ariz. 363, 365 (1965)), and may be challenged via Arizona Rule of Civil Procedure 60(b)(4) at any time, "even if the party seeking relief delayed unreasonably," *Martin v. Martin*, 182 Ariz. 11, 14 (App. 1994) (quoting *Brooks v. Consol. Freightways*, 173 Ariz. 66, 71 (App. 1992), and citing *In re Estate of Milliman*, 101 Ariz. 54, 58 (1966)); Ariz. R. Civ. P. 60(b)(4), (c)(1).

**¶11**         Generally, we review an order denying a motion to set aside a final judgment for an abuse of discretion, *see State ex rel. Brnovich v. Culver*, 240 Ariz. 18, 19-20, ¶ 4 (App. 2016) (citing *City of Phoenix v. Geyler*, 144 Ariz. 323, 329 (1985)), but "proper service under the rule is a legal question of personal jurisdiction which we review *de novo*," *Ruffino v. Lokosky*, 245 Ariz. 165, 168, ¶ 9 (App. 2018) (citing *Duckstein v. Wolf*, 230 Ariz. 227, 233, ¶ 19 (App. 2012), and *Ezell*, 224 Ariz. at 536, ¶ 15).  Whether an agency relationship exists is a question of fact, *Sparks v. Republic Nat'l Life Ins.*, 132

Ariz. 529, 542 (1982) (citing *Corral v. Fid. Bankers Life Ins.*, 129 Ariz. 323, 326 (App. 1981)), and we defer to the trial court's factual findings unless they are clearly erroneous, *Ruffino*, 245 Ariz. at 168, ¶ 9 (citing *Huskie v. Ames Bros. Motor & Supply Co.*, 139 Ariz. 396, 401 (App. 1984)).

¶12         The Arizona Rules of Civil Procedure allow a party to accept service of process through an authorized agent. Ariz. R. Civ. P. 4(f)(2) ("A party subject to service under Rule 4.1 or 4.2 may accept service."). "The acceptance of service must be in writing, signed by that party or that party's authorized agent or attorney, and be filed in the action." *Id.* An agent's actual authority "may be proved by direct evidence of express contract of agency between the principal and agent or by proof of facts implying such contract or the ratification thereof." *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 597, ¶ 29 (App. 2007) (quoting *Corral*, 129 Ariz. at 326, and citing Restatement (Third) of Agency § 2.01 cmt. b (2006)).

¶13         "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1), *cited favorably by Fid. & Deposit Co. of Md. v. Bondwriter Sw., Inc.*, 228 Ariz. 84, 90, ¶ 31 (App. 2011). "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." Restatement (Third) of Agency § 4.01(2). Generally, "ratification retroactively creates the effects of actual authority," Restatement (Third) of Agency § 4.02(1), and thereby "recasts the legal relations between the principal and agent as they would have been had the agent acted with actual authority," *Bondwriter*, 228 Ariz. at 90, ¶ 31 (citing Restatement (Third) of Agency § 4.02 cmt. b). The legal consequences of an act subsequently ratified by the principal thus "relate back" to the time the agent acted. *See* Restatement (Third) of Agency § 4.02 cmt. b.

¶14         Finally, in evaluating whether Diane authorized Tom to act upon her behalf, we are mindful that "'the degree of proof required to establish and define the agency relationship' between spouses is lower than with non-spouses." *Escareno v. Kindred Nursing Ctrs. W., L.L.C.*, 239 Ariz. 126, 130, ¶ 10 (App. 2016) (quoting *Ruesga*, 215 Ariz. at 598, ¶ 33).

¶15         Here, the record shows Diane gave Tom implicit authority to conduct the general management duties and responsibilities associated with the Property. Tom was responsible for paying the property taxes and maintained a separate bank account for doing so to which Diane had no access. Tom was also responsible for the upkeep of the Property and

continued to bear these responsibilities after quitclaiming the deed to Diane in 2007.

¶16 Even if the general authority Diane bestowed upon Tom to manage the Property did not include specific authority to accept service of the foreclosure complaint on her behalf, Diane ratified Tom's actions. The record reflects Diane learned of Tom's actions in accepting service upon her behalf no later than October 31, 2014. On that date, Tom explained in a signed declaration that:

> A Stipulation was forwarded to me and, because of my wife's poor health and stress risk, I signed for her. It was apparently filed on May 7, 2012. . . . At the time that she (I) signed the Stipulation, I had an expectancy of getting $40,000 through a business deal that I was engaged in with a client.

On the same day, Diane averred, in writing and under penalty of perjury, that "all facts stated [in Tom's signed declaration were] true and accurate to [her] personal knowledge."[5] By acknowledging Tom's acceptance of service upon her behalf, rather than repudiating the action, Diane exhibited "conduct that justifies a reasonable assumption" that she consented to his conduct.[6] *See* Restatement (Third) of Agency § 4.01(2)(b). The legal consequence of Diane's ratification of Tom's actions relates back to the

---

[5] Although Diane signed another declaration two years later claiming she had only sworn "to [her] personal knowledge and truthfulness paragraphs 1-15 in [Tom's] Declaration," the 2014 declaration states otherwise, indicating she had read Tom's Declaration and then averred "*all the facts stated therein* [we]re true and accurate to [her] personal knowledge." (Emphasis added).

[6] We reject Diane's assertion, made without any citation to legal authority or meaningful analysis, that the acceptance of service was "legally incompetent" because Tom signed her name rather than his own as an authorized agent. Diane's ratification of the alleged forgery "retroactively create[d] the effects of actual [implied] authority," *see supra* ¶ 13, such that the form of the signature is irrelevant, *cf. Sec. P. Fin. Corp. v. Nelson* (*In re Nelson*), 761 F.2d 1320, 1322 (9th Cir. 1985) ("The fact that . . . the documents bore his wife's signature, and not that he had signed them as an authorized agent . . . does not alter our conclusion because a principal is liable for the fraud of an agent committed when the agent is, as here, executing a transaction within the scope of his authority.") (applying California law) (citation omitted).

moment Tom accepted service of the foreclosure complaint. As such, Diane cannot now argue that he acted other than as her authorized agent within the meaning of Rule 4(f)(2).

¶17     Accordingly, the 2012 judgment was not void for lack of personal jurisdiction and the trial court correctly denied Diane's motion to set aside.

## CONCLUSION

¶18     The trial court's order denying the motion to set aside is affirmed. As the prevailing parties, Appellees are awarded their costs incurred on appeal upon compliance with ARCAP 21(b).

